**PROVIDENT NATIONAL BANK**

v.

**CALIFORNIA FEDERAL SAVINGS & LOAN ASSOCIATION.**

**Civ. A. No. 85–1963.**

United States District Court, E.D. Pennsylvania.

Dec. 12, 1985.

William A. Slaughter, Philadelphia, Pa., for plaintiff.

J. Justin Blewitt, Jr., Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant's motion to dismiss plaintiff's complaint on the grounds that this court lacks jurisdiction over the subject matter of the complaint and jurisdiction over the person of the defendant and plaintiff's motion for sanctions. For the reasons stated herein, defendant's motion will be denied and plaintiff's motion will be dismissed as moot.

## FACTS

Plaintiff, Provident National Bank, is a national banking association with its principal place of business in the Commonwealth of Pennsylvania. Defendant, the California Federal Savings and Loan Association, is a Federal Savings and Loan Association, federally chartered under the Home Owners' Loan Act of 1933. *See* 12 U.S.C. § 1461 et seq. Defendant has 138 branch offices in California, 37 branch offices in Florida, 13 branch offices in Georgia, and 6 branch offices in Nevada. A substantial amount of defendant's business is conducted in those four states, California, Florida, Georgia, and Nevada.

A smaller amount of defendant's business is conducted in Pennsylvania. Defendant had on December 31, 1984, 631 depositors with Pennsylvania addresses of a total number of 953,390 depositors. Defendant's Pennsylvania depositors number only .066% of defendant's total number of depositors. In addition, the Pennsylvania depositors contributed a mere $10,000,-000.00 to defendant's $14 billion of total deposits, or .071% of defendant's total deposits. Moreover, on December 31, 1984, a mere $10,000,000.00 of defendant's total outstanding loans of $12 billion could be traced to Pennsylvania residents. In other words, only .083% of defendant's total outstanding loans on December 31, 1984 were to Pennsylvania residents.

On January 8, 1985, plaintiff agreed to sell a Negotiable Certificate of Deposit (the

"Certificate") to Asset Management Fund for Savings Institutions, Inc.[1] in the amount of $5 million at a rate of $8.30%. The Certificate was to have a term of 61 days, beginning on January 9, 1985 and maturing on March 11, 1985. It was to be delivered, physically, on January 9, 1985, by Manufacturers Hanover Bank,[2] defendant's transfer agent for all negotiable instruments in the United States, to State Street Boston Securities Service Corporation.[3]

The offer, acceptance, negotiation, and arrangement of the sale of the Certificate was done on January 8, 1985 in a telephone call between P. Louis Johnson ("Johnson"), defendant's Vice President Corporate Savings, and Mark McEntee ("McEntee"), an employee of Lehman Management Co., Inc. At the time of the phone call, Johnson was physically located in California, and McEntee was in New York. At the end of the phone conversation, Johnson agreed to send McEntee a letter confirming the conversation and, at McEntee's request, to send a copy of that letter to Provident Institutional Management Corporation in Pennsylvania.[4]

On January 9, 1985, the confirmation letter was sent to McEntee and a copy of that letter was sent to Provident Institutional Management Corporation in Pennsylvania.

Plaintiff provided the funds on January 9, 1985 for the purchase of the Certificate.

The Certificate was not delivered on January 9, 1985. In fact, the Certificate had not been delivered on February 25, 1985, 47 days after the scheduled delivery date.[5]

At the maturity of the Certificate, defendant made a repayment. Plaintiff asserts in this lawsuit, however, that defendant's repayment was inadequate, or, in other words, defendant failed to repay plaintiff $54,180.56. Plaintiff seeks a recovery of damages in the amount of $54,180.56 plus interest and costs.

In its present motion to dismiss, defendant argues (1) that this court, a Federal District Court, lacks diversity jurisdiction because, as a federally chartered savings and loan association, defendant is not a citizen of any state for diversity jurisdiction purposes and (2) that this court, sitting in Pennsylvania, cannot assert general jurisdiction over the person of the defendant because the defendant has not had continuous and systematic business contacts with Pennsylvania at any time. Defendant contends, and plaintiff concedes, that this court cannot assert specific jurisdiction because plaintiff's claim does not arise out of or relate to defendant's contacts with Pennsylvania.

DISCUSSION

1. *Subject Matter Jurisdiction.*

The Home Owners' Loan Act of 1933 created the Federal Home Loan Bank

---

1. The record created by the parties does not indicate the identities of Asset Management Fund or Savings Institutions, Inc. The court does not know whether Asset Management Fund has any relationship with plaintiff or defendant or whether Savings Institutions, Inc. has any relationships with plaintiff or defendant. The court presumes, however, on this incomplete record, for purposes of this motion only, that Asset Management Fund is a vehicle by which defendant buys certificates of deposits, and Savings Institutions, Inc. is a vehicle by which plaintiff sells certificates of deposits.

2. The record states that Manufacturers Hanover Bank's address is 40 Wall Street, New York, New York.

3. The record states that State Street Boston Securities Service Corporation's address is at 50 Broadway, New York, New York.

4. The record does not reflect whether Provident Institutional Management Corporation was related in any way to plaintiff or Asset Management Fund. Consequently, the record does not indicate whether defendant could have known that funds for the purchase of the Certificate ultimately came from plaintiff. Defendant had no direct contact with plaintiff concerning the sale of this Certificate until the institution of the lawsuit.

5. The record does not reflect whether the Certificate was ever delivered to plaintiff or whether the $5,000,000.00 loan proceeds were ever delivered to defendant. The court presumes, for purposes of this motion, that the Certificate was eventually delivered to plaintiff and that defendant received the loan proceeds on January 9, 1985.

Board (the "Board"), 12 U.S.C. § 1464, and authorized the Board "to provide for the organization, incorporation, examination, operation and regulation" of Federal Savings and Loan Associations and "to issue charters therefor...." 12 U.S.C. § 1464(a)(1). Defendant has been chartered by the Board.

National banks may be subject to a federal court's diversity jurisdiction [6] pursuant to 28 U.S.C. § 1348. *See Trent Realty Associates v. First Federal Savings and Loan Association,* 657 F.2d 29 (3d Cir.1981). Other federally charted corporations, such as defendant, may also fall without the court's diversity jurisdiction. Wright, Miller & Cooper in *Federal Practice and Procedure* explains as follows:

> When ... federally chartered corporations [, other than national banks,] are involved, three situations should be distinguished for the purpose of determining whether a federal court has diversity jurisdiction. 1) If a corporation is federally chartered and more than one half of its capital stock is owned by the United States, then federal question jurisdiction exists,[7] provided, of course, that any requisite amount in controversy is met. 2) If a corporation is federally chartered and more than one half of its capital stock is not owned by the United States, but the corporation's activities are localized in a particular state, it is deemed a citizen of the state in which these activities take place. Consequently, the federal courts may exercise diversity jurisdiction, assuming, of course, the opposing party is a citizen of a state other than that in which the corporation performs most of its activities and the requisite amount in controversy exists.[8] 3) If more than one half of the corporation's capital stock is not owned by the United States and the corporation's activities are distributed among several states, then federal question jurisdiction does not exist,[9] and "the general rule * * * [followed] is that the citizenship of a federal corporation created to operate in one or more states is national only. Such a corporation has no state citizenship for jurisdictional purposes unless Congress so enacts." [Footnotes Added]

Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction 2d § 3627 (1984) (Quoting *Burton v. U.S. Olympic Committee,* 574 F.Supp. 517 (C.D.Pa. 1983).)

In the present case, on this record, defendant's business activity appears to be localized in California. The record reflects that, on December 31, 1984, defendant had 138, or 71%, of its branch offices in California and had a substantial amount of its deposits and outstanding loans in California. Consequently, defendant, the court finds, is a citizen of California for diversity jurisdiction purposes.

Defendant does not contend that plaintiff's claim does not satisfy the statutorily required jurisdictional amount.

As a result, briefly stated, the court holds that it has subject matter jurisdiction over the instant lawsuit.

2. *Jurisdiction Over the Person of the Defendant.*

Turning to defendant's second argument, that this court cannot assert personal jurisdiction over the defendant, it is appropriate to set forth briefly the frequently repeated principals of personal jurisdiction.

---

**6.** Title 28 U.S.C. § 1332 provides, in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and is between—
> (1) citizens of different States;

28 U.S.C. § 1332(a)(1). Plaintiff makes no claim such that this court may exercise subject-matter jurisdiction under any other statute.

**7.** 28 U.S.C. § 1349.

**8.** *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union,* 272 F.2d 453 (3d Cir.1959); *Elwert v. Pacific First Federal Savings and Loan Association,* 138 F.Supp. 395 (D.Or.1956).

**9.** *See Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union,* 272 F.2d 453 (3d Cir.1959).

The plaintiff has the burden of establishing a sufficient jurisdictional facts upon which the court can exercise jurisdiction. *Compagnie des Bauxites de Guinee v. L'Union*, 723 F.2d 357, 362 (3d Cir.1983); *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir.1985). Before a forum may assert jurisdiction over a nonresident defendant in that jurisdiction over the nonresident defendant is authorized by a so-called "long-arm statute" of the forum. Under Pennsylvania's long-arm statutes a court, sitting in Pennsylvania, "may exercise jurisdiction over a nonresident defendant to the fullest extent allowed by the Constitution of the United States ...," *id.*, § 5322(b), where plaintiff's cause of action arose from nonresident's "transacting business" within the forum, 42 Pa.Cons.Stat. Ann. § 5322,[10] or where the nonresident defendant has been "carrying on ... a continuous and systematic part of its general business" within Pennsylvania. *Id.* § 5301(a)(2)(iii). *See Johnson v. Summa Corporation*, No. 84–2844, *Slip Op.* (E.D.Pa. October 3, 1985) (Ditter, J.).

The extent to which the long-arm statute may reach, however, is limited by the due process clause of the United States Constitution. A long-arm statute may not authorize a court to assert personal jurisdiction over a nonresident defendant unless the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In Pennsylvania, the reach of the long-arm statutes are coextensive with the extent permitted by the due process clause of the United States Constitution. *See Commodore Business Machines v. JST Distributing Co.*, 596 F.Supp. 409 (E.D.Pa.1984).

The court, after *International Shoe*, has explained that there are two types of personal jurisdiction. On one hand, where plaintiff's claim arose out of or is related to defendant's contacts with the forum, the court, sitting in the forum, can exercise jurisdiction over the nonresident defendant, if the defendant has minimum contacts with the forum. *Helicopteros Nationales de Columbia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984). This type of personal jurisdiction is called specific jurisdiction. *Id.* On the other hand, where plaintiff's claim did not arise out of or is related to defendant's contacts with the forum, the court can exercise jurisdiction over the nonresident defendant if the defendant's contacts with the forum is continuous and substantial. *Helicopteros*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *See Johnson v. Summa Corporation, supra; Strick v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951 (E.D.Pa.1982). This type of jurisdiction is called general jurisdiction. *Id.*

The Third Circuit has clarified that the continuous and substantial standard is a higher threshold that the minimum contacts standard:

If the claim pursued arises from non-forum related activity, the plaintiff must demonstrate that in other respects the defendant has maintained "continuous and substantial" forum affiliations. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Compagnie des Bauxites de Guinea v. Ins. Co. of North America*, 651 F.2d 877 (3rd Cir.1981). Obviously this is a much higher threshold to meet for the facts required to assert this "general" jurisdiction must be "extensive and persuasive." *Id.* at 890 (Gibbons, J., dissenting).

*Reliance Steel Products v. Watson, Ess, Marshall*, 675 F.2d 587, 588–89 (3d Cir. 1982). In *Gehling v. St. George's School*

---

**10.** Plaintiff does not claim that the cause of action arose from defendant's transaction of business in Pennsylvania. Therefore, 42 Pa. Cons.Stat.Ann. § 5322 is not a basis upon which the court can assert long-arm jurisdiction over the defendant.

*of Medicine, Ltd.,* 773 F.2d 539 (3d Cir. 1985), the Third Circuit held that plaintiff had failed to establish that the nonresident defendant, a School of Medicine whose principal place of business was in Grenada, West Indies, had continuous and substantial business activity in Pennsylvania. The nonresident defendant advertised in non-Pennsylvania newspapers with international circulation, drew a small portion of its student body from Pennsylvania, derived a small percentage of its revenues and income from Pennsylvania, and conducted a joint international program with a Pennsylvania educational institution.

In *Helicopteros,* the Supreme Court held that a court, sitting in Texas, could not assert personal jurisdiction over a foreign corporation in a wrongful death action arising out of a helicopter crash in Peru. In that case, the Court held that the continuous and substantial threshold was not met even though defendant's agent had solicited helicopter services in Texas, the contract for helicopter services was negotiated in Texas, defendant had purchased $4,000,-000.00, or 80% of its helicopters and spare parts between 1970 and 1977 from a Texas company, defendant regularly sent employees to Texas to be trained as pilots and to ferry helicopters back to South America, and defendant was paid compensation for services by checks of substantial amounts of money drawn on a Texas bank.

In the instant case, defendant asserts that its contacts with Pennsylvania are so insufficient that it would be contrary to the traditional notions of fair play and substantial justice for this court to exercise general jurisdiction over the defendant. In particular, defendant highlights that defendant has a mere .066% of its total depositors in Pennsylvania who account for a mere .071% of defendant's total deposits; that defendant loans only .083% of its total loans to Pennsylvania residents; and that Pennsylvania households make up a mere .10% of the total number of households which have a loan, deposit, or other relationship with defendant. Defendant points out also that it is not registered to do business, maintains no office or other place of business, has no employees or agents, has no mailing address, has no bank accounts other than a zero-balance account, has no lawsuits other than this one, pays no taxes, and does no advertising in Pennsylvania.

Arguing to the contrary, plaintiff contends that proof that a Savings and Loan has $10,000,000.00 in deposits and $10,000,-000.00 in loans in Pennsylvania, has 631 Pennsylvania depositors, and has some type of banking relationship with 708 Pennsylvania households establishes that defendant has substantial and continuous business affiliations with Pennsylvania.

The court believes that plaintiff has satisfied its burden of proof. Plaintiff here has presented a case for the exercise of this court's general jurisdiction superior to the case presented by plaintiff in *Helicopteros.* Plaintiff, in the instant case, has established dollar figures which are greater than those established in *Helicopteros.* Also, plaintiff here relies on total deposit and loan matters central to the conduct of the defendant's business. A Federal Savings and Loan Association, such as the defendant, is in the business of lending and borrowing money. The defendant in *Helicopteros,* however, was in the business of "providing helicopter transportation for oil and construction companies in South America." *Helicopteros* merely purchased equipment and know-how from companies in Texas. It did not conduct its business of helicopter transportation services in Texas. Accordingly, the *Helicopteros* defendant had a lesser expectation of being hauled into court in Texas and a weaker ability to marshall resources to conduct a fair defense than the instant defendant's expectation and ability.

The court believes, also, following the Third Circuit's guidance in *Gehling, supra,* that defendant's proposed statistics of minute percentages of its deposits, loans, and depositors is an irrelevant statistic. In *Gehling,* the Third Circuit cited approvingly *Galentz v. Fosdick,* 320 Pa.Super. 38, 466 A.2d 1049 (Pa.Super.Ct.1983). In *Gal-*

*entz*, the Pennsylvania Superior Court had found it irrelevant that only a small percentage of defendant trucking company's income was derived from its Pennsylvania activities and had affirmed the exercise of general jurisdiction over a nonresident defendant. Similarly, the Third Circuit in *Gehling* held that the statistic that defendant derived only a small percentage of defendant's total income from Pennsylvania was irrelevant.

Similarly, this court believes that the percentage of defendant's Pennsylvania-related deposits, loans, and depositors as compared to defendant's total deposits, loans and depositors is an irrelevant statistic. The absolute amount of defendant's Pennsylvania-related deposits, loans and depositors may be large enough to show that defendant has conducted substantial business activity in Pennsylvania, although the percentage is minute. Moreover, the court notes that the absolute figures of defendant's deposit, loans and customers in Pennsylvania represent defendant's business activities directly and solely in Pennsylvania.

For these reasons, the court believes that the figures produced by plaintiff of $10,000,000.00 of deposits, $10,000,000.00 of loans and approximately 700 customers in Pennsylvania constitute proof that defendant has engaged in substantial business activity in Pennsylvania. Additionally, the court construes defendant's refusal to disclose to plaintiff in discovery the figures of defendant's business activities in Pennsylvania prior to 1984 as an admission that defendant has engaged in continuous business activity in Pennsylvania.

Having decided that this court has general jurisdiction over the defendant, the court need not consider whether it has specific jurisdiction over the defendant.

CONCLUSION

Accordingly, defendant's motion to dismiss will be denied. Plaintiff's motion for sanctions will be dismissed as moot.[11]

---

11. Plaintiff has, also, moved pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, for a sanction taking as established the facts forming the basis of personal jurisdiction. Plaintiff asserts that defendant has failed to respond to plaintiff's interrogatories concerning jurisdiction and its refusal to comply with the court's Order of July 31, 1985 directing that such interrogatories be answered. In particular, plaintiff has noted that defendant continues to refuse to supply any information concerning the extent of its business or its borrowing or lending activity in Pennsylvania for any time earlier than 1984 or concerning its borrowings from Pennsylvania financial institutions. *See Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxties de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

Plaintiff's motion is now moot, however, because the court holds that defendant's activities in Pennsylvania are substantial and believes that defendant does not now contend that defendant's activities in Pennsylvania were not continuous.