PROVIDENT NATIONAL BANK

v.

CALIFORNIA FEDERAL SAVINGS &
LOAN ASSOCIATION

v.

LEHMAN MANAGEMENT CO., INC.
and State Street Securities Service
Corporation.

Appeal of CALIFORNIA FEDERAL
SAVINGS & LOAN ASSOCIATION.

No. 86–1622.

United States Court of Appeals,
Third Circuit.

Argued March 16, 1987.

Decided June 4, 1987.

J. Justin Blewitt, Jr. (argued), Robert John Jensen, Philbert E. Seals, William L. Callender, Los Angeles, Cal., for appellant.

William A. Slaughter (argued), Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee, Provident Nat. Bank.

Before HIGGINBOTHAM, MANSMANN, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal in a diversity action between two large financial institutions, each having headquarters in opposite sections of the country, raises a not uncommon question of how much contact a modern lending institution must have within the forum state to confer *in personam* jurisdiction. The United States District Court held in the instant case that California Federal Savings & Loan Association (California Federal) had sufficient "continuous and systematic general business contacts" within Pennsylvania to confer personal jurisdiction over an action filed against it by Provident National Bank (Provident) to recover a claim for money due it under the terms of a certificate of deposit. The court therefore denied California Federal's motion to dismiss the complaint for lack of *in personam* jurisdiction. The parties tried the case before a panel of arbitrators, who awarded Provident the full amount of its claim, plus interest. The parties stipulated to entry of a final judgment in order that this appeal, limited to the jurisdictional issue, could be taken. California Federal accordingly now appeals from the judgment. We affirm.

## I.

The plaintiff, Provident, is a national banking association with its principal place of business in the Commonwealth of Pennsylvania. California Federal is a savings and loan association federally chartered

and headquartered in California with 138 branch offices in California, 37 branch offices in Florida, 13 branch offices in Georgia, and 6 branch offices in Nevada.

During the relevant period, between 700 and 1000 of California Federal's depositors resided in Pennsylvania, representing only about .066% of its almost one million depositors. The Pennsylvania depositors contributed about $10 million to California Federal's total of $14 billion in deposits (about .071%). Only about $10 million of California Federal's total outstanding loans of $12 billion (about .083%) were traceable to Pennsylvania residents.

California Federal maintained no Pennsylvania office, employees, agents, mailing address, or telephone number. It had not applied to do business in Pennsylvania, did no advertising in Pennsylvania, and paid no taxes there. Three Pennsylvania financial institutions, however, serviced $10.2 million of loans for California Federal.

California Federal also continuously maintained a "controlled disbursement account" with Mellon Bank in Pittsburgh. This account was a "zero balance" arrangement under which Mellon Bank notified California Federal every business day of the total amount of checks cleared through the account that day, and California Federal wired a transfer of funds for that amount to Mellon Bank the same day. There is also evidence that in 1985 California Federal sold certificates of deposit on sixteen separate occasions aggregating $144,500,000 to mutual funds for which Provident acted as custodian.

Although only properties in California, Nevada, Georgia, or Florida could be used to secure loans made by California Federal, California Federal purchased mortgages in the secondary market, and these mortgages could be secured by property located in Pennsylvania. The record does not disclose the total value of California Federal's security interest in property located in Pennsylvania.

In the transaction giving rise to this dispute, California Federal agreed to sell a $5 million negotiable certificate of deposit to Asset Management Fund for Savings Institutions, Inc., one of the mutual funds for which Provident acted as custodian. Under the terms of the agreement, Provident was to transfer funds for payment for the certificate to State Street Boston Securities Service Corporation, located in New York. California Federal was to arrange for physical delivery of the certificate by its transfer agent, Manufacturers Hanover Bank, also located in New York.

Provident provided the funds on January 9, 1985, but the certificate was not delivered. At the certificate's maturity, California Federal made a repayment which Provident asserted was $54,180.56 less than the amount due.

Provident brought this action for damages in the amount of $54,180.56 plus interest and costs in the United States District Court for the Eastern District of Pennsylvania. California Federal responded with a motion to dismiss for, *inter alia*, lack of *in personam* jurisdiction. The district court denied the motion and ordered the matter to proceed to arbitration. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 624 F.Supp. 858 (E.D.Pa.1985). The district court entered judgment in accordance with the parties' stipulation and the arbitrators' award.

## II.

■ A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed.R.Civ.P. 4(e). The Pennsylvania Long-Arm Statute provides in relevant part that "the jurisdiction of the tribunals of this Commonwealth shall extend ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat. Ann. § 5322(b) (Purdon 1981). *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). The due process clause of the fourteenth amendment of the United States Constitution limits the reach of long-arm statutes

so that a court may not assert personal jurisdiction over a nonresident defendant who does not have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction. *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985). To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ("specific jurisdiction") or that the defendant has "continuous and systematic" contacts with the forum state ("general jurisdiction"). *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 1872, 1873, 80 L.Ed.2d 404 (1984); *Gehling v. St. George's School of Medicine*, 773 F.2d at 541. Under 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(iii) (Purdon 1981 and Supp.1986), the plaintiff must show that the defendant carried on "a continuous and systematic part of its general business within [the] Commonwealth." As Provident concedes that its claim does not arise out of California Federal's activities within Pennsylvania, we consider the facts only under the general jurisdiction analysis.

This court has held that the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 212 (3d Cir.1984); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982). The nonresident's contacts to the forum must be continuous and substantial. *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir.1985); *Compagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877 (3d Cir.1981).

In *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir.1985), this court held that the District Court for the Middle District of Pennsylvania lacked general *in personam* jurisdiction over a Grenada, West Indies, medical college. The defendant school's contacts with Pennsylvania included advertising in the *New York Times* and the *Wall Street Journal*; it drew an approximate six percent of its students from Pennsylvania (and thus received annually several hundred thousand dollars in tuition from Pennsylvania residents); and it conducted a joint international program with a Pennsylvania college. The district court in the present case, however, noted that in *Gehling*, this court stated that "the fact that only a small percentage of the [defendant's] total income was attributable to Pennsylvania activities was irrelevant." 773 F.2d at 543 (citing *Gulentz v. Fosdick*, 320 Pa.Super. 38, 466 A.2d 1049 (1983)). Thus, concluded the district court, "[t]he absolute amount of [California Federal's] Pennsylvania-related deposits, loans, and depositors may be large enough to show that [California Federal] has conducted substantial business activity in Pennsylvania, although the percentage is minute." 624 F.Supp. at 864.

However, in *Gulentz v. Fosdick*, 320 Pa.Super. 38, 466 A.2d 1049 (1983), the Pennsylvania case to which this court referred in *Gehling* and upon which the district court in the present case relied, the court, although rejecting as irrelevant the percentage of income a defendant derived from its Pennsylvania contacts, found sufficient contacts not from the substantiality of the absolute dollar amounts involved, but from the defendants' purposeful and extensive availment of the privilege of using Pennsylvania highways. Thus although we agree with the district court

that the size of the percentage of California Federal's total business represented by its Pennsylvania contacts is generally irrelevant, we do not believe that the absolute amount of dollars and customers is more persuasive proof of substantial "continuous and systematic" activity by California Federal in Pennsylvania.

■ We find somewhat more convincing the district court's observation that the nature of California Federal's contacts with Pennsylvania respecting deposits and loans was central to the conduct of its business. In *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the defendant had solicited helicopter services in Texas, negotiated its contract for services there, had purchased about 80% of its helicopters, spare parts, and accessories for more than $4 million from a Texas company over an eight year period, and regularly sent employees to Texas for training and to bring back helicopters. These activities were important but not central to the defendant's business, the provision of helicopter services for South American oil and construction companies. In contrast, California Federal's activities relating to Pennsylvania, the borrowing and lending of money, are the bread and butter of its daily business. It would appear that due to the nature of its contacts, California Federal would have a greater expectation of being haled into court in Pennsylvania than the *Helicopteros* defendant had of being haled into court in Texas.

We note, however, that the deposits and loans themselves were not made in Pennsylvania, but were made in California and elsewhere for Pennsylvania resident customers. On the other hand, California Federal's zero-balance account with the Mellon Bank constituted a substantial, ongoing, and systematic activity in Pennsylvania. From California Federal's replies to Provident's interrogatories, it appears that California Federal conducted business regarding that account with the Mellon Bank every business day. This daily contact was a continuous and central part of California Federal's business.

■ In addition, California Federal admitted in discovery that it "can become the owner of a loan secured by property in Pennsylvania through the purchase of mortgages in the secondary markets." The record does not disclose the number or value of any such security interests; indeed, in both its original and its revised answers to Provident's jurisdictional interrogatories, California Federal replied to a request that it identify all properties and assets in Pennsylvania it owned or otherwise held that it had "[n]one other than as answered in other interrogatories." The only other reference to any security interests in the answers to the interrogatories was the above-quoted sentence respecting purchase of mortgages. The district court's construction of California Federal's refusal after two requests to provide adequate information concerning its borrowing and lending activity in Pennsylvania prior to 1984 as an admission that it has engaged in continuous business activity in Pennsylvania, 624 F.Supp. at 864, was warranted.

### III.

In sum, we hold that the record in this case establishes that California Federal carried on a continuous and systematic part of its general business within the Commonwealth of Pennsylvania sufficient to confer *in personam* jurisdiction over it upon the district court.

Accordingly, the judgment of the district court will be affirmed.

Costs taxed against the appellant.