AMERICAN CENTENNIAL INSURANCE
COMPANY, Plaintiff,

v.

Juan Manuel HANDAL, Estudio Consoltivo De Seguros, S.A., Compania Agricola De Seguros, S.A., Compania Apolo Cia. Argentina De Segurjos, S.A., Argos Compania De Seguros, S.A., Aseguradora Del Valle, S.A., Banco De Seguros Del Estado, Bolivar, S.A., De Seguros Generales, Compania Central De Seguros, S.A., Centro Asegurador, S.A., Cia. De Seguros La Union, S.A., Cfa. Colonial De Seguros De Panama S.A., Compania De Seguros Atlas, S.A., Compania De Seguros Generales Lloyd De Chile, S.A., Compania De Seguors Generales "B.N.C." S.A., Corporacion Insular De Seguros Credinform Internacional, S.A., De Seguros S.A., First Fire & Marine Insurance Co., Ltd., Hafez Insurance Co., Ltd., Instituto Nacional De Reaseguros "Inder," La Consolidada De Seguros Y Reaseguros, S.A., Lloyd Italico & L'Ancora, Lloyd Italico E L'Ancora, The Oriental Fire & Marine Ins. Co., Ltd., Lucky Insurance Company, Ltd., Pan Korea Insurance Co., Prudecia Cia. Argentina De Seguros Generales, S.A., P.T. Asuransi Indrapura, P.T. Reasuransi Umum Indonesia, Reaseguradora Boliviana S.A., Seaguros Generales S.A. "Segesa," Seker Sigorta A.S., Tai Ping Insurance Co., Ltd., ABC Corporations 1–20 and John Doe Defendants 1–20, Defendants.

Civ. A. No. 94–6233.

United States District Court,
D. New Jersey.

Oct. 3, 1995.

Stuart Peim, Jeffrey A. Durney, Edwin F. Chociey, Jr., Riker, Danzig, Sherer, Hyland & Perretti, Morristown, NJ, for Plaintiff.

David R. Gross, Joseph J. Schiavone, Elda Beylerian, Kevin Helewa, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ, for Defendants.

### AMENDED [1] LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge.

This matter comes before the Court on defendant Juan Handal's ("Handal") motion to quash service of process and/or to dismiss all claims against him for lack of personal jurisdiction, and on defendant Lucky Insurance Company, Ltd.'s ("Lucky") motion for sanctions.[2] The Court has reviewed the parties' submissions and has heard oral argument in the matter. For the reasons set forth herein, the Court shall grant Handal's motion, and shall deny Lucky's motion.

### Factual Background

In December of 1994, plaintiff American Centennial Insurance Company ("ACIC") requested permission to take the deposition of Mr. Juan Handal in the underlying litigation. That action involves the question whether certain corporations (hereafter "the companies") were parties to a reinsurance agreement between Pool Latino De Reaseguros (PLAR) and ACIC, and thus subject to mandatory arbitration clauses in those agreements. Magistrate Judge Hedges ordered the production of Handal for deposition in Panama. (Peim Certif., Exh. A., Schiavone Aff., Exh. A.)

Subsequent to Magistrate Judge Hedges' Order, negotiations took place between counsel for ACIC and the companies in an attempt to agree upon a more convenient time and location for the taking of the deposition. New Jersey was agreed upon as the most favorable situs for Handal's deposition.[3] On the week of December 18, 1994, Handal travelled to New Jersey to be deposed as a witness in this action. Handal's deposition was taken between December 20–22, 1994. (Peim Certif., ¶ 12). Prior to the conclusion of Handal's deposition, counsel for ACIC personally served Handal with process in the instant action. (Peim Certif., ¶ 25, Schiavone Aff. ¶ 3).[4] ACIC contends that service upon Handal was in compliance with Fed.R.Civ.P. 4(c). Handal argues that he was immune from service while in New Jersey for a depo-

---

1. This Letter Opinion amends and replaces the Court's Letter Opinion dated September 29, 1995.

2. Defendants Lucky, Compania Agricola de Seguros, S.A., First Fire & Marine Insurance Company, Ltd., and Oriental Fire & Marine Insurance Company, Ltd. ("the Corporate defendants") had originally moved to quash service, but their motion has been mooted by ACIC's assertion of crossclaims against them in a related matter entitled *Compania Agricola De Seguros, S.A., et al. v. American Centennial Insurance Company*, Civ. No. 92–2483 (NHP) (the "underlying litigation").

3. Counsel for both sides dispute the contention that they initiated the discussions which led to New Jersey being chosen as the site for Mr. Handal's deposition. That issue is not determinative here.

4. On that same day, December 22, 1994, ACIC served summonses upon the Corporate defendants' counsel in the underlying litigation: Budd, Larner, Gross, Rosenbaum, Greenberg & Sade ("Budd Larner"). *See infra.*

sition in furtherance of the underlying litigation.[5]

## A. Service of Process on Handal

■ Generally, non-resident witnesses or parties are exempt from service of process while they are in the jurisdiction solely on the business of the court. *Page Co. v. Macdonald,* 261 U.S. 446, 448, 43 S.Ct. 416, 417, 67 L.Ed. 737 (1923); *Stewart v. Ramsay,* 242 U.S. 128, 129, 37 S.Ct. 44, 45, 61 L.Ed. 192 (1916); *Chambliss v. Haeberle,* 33 F.Supp. 835, 836 (D.N.J.1940). However, the rule of immunity with regard to non-residents is not boundless. For instance, the Supreme Court has held that a party's non-resident attorney was not immune from service while representing his client in court. *Lamb v. Schmitt,* 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1932). In *Lamb,* the non-resident attorney was denied immunity because service was necessary to recover funds alleged to have been fraudulently paid to him as attorneys' fees by the defendant as part of an attempt to defeat the rights secured to the plaintiff in the first action. *Id.* at 226, 52 S.Ct. at 318. The *Lamb* Court noted that immunity was founded upon the convenience of the court, not the convenience of the individual parties, and that immunity "shall be extended or withheld only as judicial necessities require." *Id.* at 225, 52 S.Ct. at 318. The Court stated the test to be "whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." *Id.* at 228, 52 S.Ct. at 319. "Immunity was created to expedite the work of the court, not as a windfall for litigants." *United States Nat'l Bank of Oregon v. Great Republic Life Ins. Co.,* 54 F.R.D. 498, 499 (D.Or. 1971).

■ Two different interpretations of the *Lamb* immunity test have developed. One school of thought suggests that immunity should not be granted if service in the second action is closely related to the first. For instance, the Tenth Circuit denied immunity to a non-resident defendant who was served by the plaintiffs while attending his deposition. *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1460 (10th Cir.1995). The *ARW* court concluded that immunity is lost "'where the later action, in which the immunity from service is claimed, arises out of or involves the same subject matter as the one in which the nonresident has voluntarily attended.'" *Id.* at 1460 (quoting *Walker v. Calada Materials Co.,* 309 F.2d 74, 76 (10th Cir.1962)).

The second theory evolving from *Lamb* is that immunity should be granted to non-residents, even when the second action is factually similar to the first, unless the grant of immunity would obstruct justice in the first suit. *Shapiro & Son Curtain Corp. v. Glass,* 348 F.2d 460 (2d Cir.), *cert. denied,* 382 U.S. 942, 86 S.Ct. 397, 15 L.Ed.2d 351 (1965); *United Nations v. Adler,* 90 F.Supp. 440, 441 (S.D.N.Y.1950); *NASL Marketing, Inc. v. de Vries,* 94 F.R.D. 309 (S.D.N.Y. 1982).[6]

*NASL* was factually similar to the instant case. In *NASL,* a witness travelled from Holland to New York for the sole purpose of testifying in the plaintiff's arbitration proceeding. Upon the completion of his testimony, the witness was served with process. In squashing service the *NASL* court determined: "Plaintiff has failed to show that any of the acts charged in the complaint have so interfered with its rights as determined in the arbitration [first suit] to justify the withholding of immunity [from service in the second suit]." 94 F.R.D. at 311.

Applying *NASL* to the instant scenario, ACIC has failed to show that a grant of immunity to Handal will in any way interfere with its rights in the first lawsuit. The first action has yet to be litigated and is still

---

5. The parties have addressed the invalidity of service in the context of fraudulent enticement of the served party into the jurisdiction. *See* 4A Wright & Miller, *Federal Practice and Procedure* § 1095 at 71 (1987). Because the immunity theory is determinative in the instant case, however, the Court need not engage in analysis of fraudulent enticement.

6. *See also Stratton v. Hughes,* 211 F. 557, 558 (D.N.J.1914) ("witnesses coming into a state for the purpose of giving depositions ... whether in pursuance of an order of court or an agreement of counsel" can be entitled to immunity from service).

pending before this Court. ACIC has not secured any rights in the underlying litigation which would be jeopardized by a grant of immunity to Handal. While alternative service upon Handal might inconvenience ACIC, such inconvenience is not a sufficient reason to deny immunity.

The principle of immunity in this context is designed to encourage nonresident witnesses to voluntarily enter a jurisdiction to participate in civil proceedings. *Stewart*, 242 U.S. at 129, 37 S.Ct. at 45. Denying immunity to non-resident witnesses, like Handal, would not encourage but would decrease participation in civil proceedings. Such a practice would cause future potential witnesses to shun a jurisdiction in order to escape a lawsuit.

This Court is satisfied that the Third Circuit Court of Appeals [7] favors encouraging the proper and comprehensive resolution of litigation, and would favor the adoption of a rule which grants immunity to non-resident witnesses appearing before the district court.[8] Adoption of this rule will encourage participation by non-resident witnesses in civil proceedings without exposing themselves to separate lawsuits.

■ In the matter *sub judice*, ACIC has not established that a grant of immunity from service to Handal "would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." *Lamb v. Schmitt*, 285 U.S. at 228, 52 S.Ct. at 319. *See Shapiro & Son*, 348 F.2d at 461; *Matter of Equitable Plan, Co.*, 277 F.2d 319 (2d Cir.1960); *NASL, supra*; *Viking Penguin, Inc. v. Janklow*, 98

F.R.D. 763 (S.D.N.Y.1983); *United Nations v. Adler, supra.*

ACIC must employ the proper methods available for the service of Handal. Immunity should not be denied to Handal solely because it was more convenient for ACIC to serve him while he was being deposed in New Jersey. A party's convenience is far outweighed by the Court's interest in securing the participation of non-residents in civil proceedings. *International Plastic Harmonica Corp. v. Harmonic Reed Corp.*, 69 F.Supp. 515, 516 (E.D.Pa.1946).

### Convenience of the Court

■ ACIC argues that Handal should be denied immunity because the taking of his deposition in New Jersey was for Handal's and his counsel's convenience, and not the Court's. ACIC relies on *Uniroyal, Inc. v. Sperberg*, 63 F.R.D. 55 (S.D.N.Y.1973), for the proposition that a non-resident coming into the jurisdiction for his own or his counsel's convenience ought not to gain immunity by suggesting he was aiding the Court.[9]

*Sperberg*, however, involved the answering of interrogatories rather than a deposition, thus distinguishing it from the instant case. Such a distinction was recognized by *Viking Penguin, Inc. v. Janklow*, 98 F.R.D. 763 (S.D.N.Y.1983).[10] The *Viking* court held that the non-resident defendant was immune from service while in New York solely for a deposition, and dismissed as "specious" the plaintiff's claim that the non-resident defendant was in New York for his own benefit and not for that of the Court.[11] *Id.* at 765. Like-

---

**7.** Neither the parties nor the Court has found precedent in the Third Circuit mandating either the grant or denial of immunity in the circumstances *sub judice*.

**8.** Clearly, cases will arise wherein justice shall require that service be permitted, but that ought to be the exception rather than the rule.

**9.** In *Sperberg*, a non-resident came into the jurisdiction of the Southern District of New York for the sole purpose of aiding his lawyer in answering interrogatories for a pending action in the Northern District of Ohio. While in New York, the non-resident was served with process and denied immunity. The *Sperberg* court concluded: "The Ohio court was not aided by the fact that

Sperberg answered interrogatories in New York; he could have answered them in any state or even in any foreign country." 63 F.R.D. at 58.

**10.** In *Viking*, a non-resident defendant was served with process in the Southern District of New York while attending a deposition for a pending proceeding in South Dakota federal court. 98 F.R.D. at 764.

**11.** The *Viking* court further distanced itself from the holding of *Sperberg*. In *Viking*, the court held: "So long as interrogatories are answered on time, the court generally has no interest in where they are answered. By contrast, the court does have an interest in where depositions are held." 98 F.R.D. at 766 n. 3.

wise, in the instant case, plaintiff has failed to establish that Handal flew from Panama to New Jersey to attend a deposition for his own benefit and not the mutual benefit of counsel on both sides. *See also Stratton, supra,* 211 F. at 558.

The *Viking* court went on to find: "it surely redounds to the efficient administration of justice to have parties agree to mutually convenient places for deposition rather than burden the court for orders compelling attendance at specified times and places." *Id.* at 765.[12] In *Viking,* the court was unpersuaded by the plaintiff's claim that a deposition could be taken anywhere, noting that presence at a deposition ensures that the initial suit will be prosecuted as vigorously as possible. *Id.* at 766. Similarly, in the instant case, Handal's presence in New Jersey for his deposition helped ensure the effective litigation of the initial suit. For the foregoing reasons, Handal's immunity should not be pierced because he voluntarily attended his deposition in New Jersey. Ergo, service upon Handal was improper and must fail.

## II. Jurisdiction

■ Handal contests this Court's jurisdiction over him in the instant case.[13]

■ Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a non-resident to the extent authorized by the law of the state in which the district court sits. Fed.R.Civ.P. 4(e). New Jersey's long-arm statute permits the exercise of jurisdiction as far as is constitutionally permissible under the due process clause of the Fourteenth Amendment. *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 145 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). Due process is in harmony with the exercise of jurisdiction over a non-present, nonresident defendant if he has "certain minimum contacts with it (the forum state) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). "Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993).

■ Once Handal has raised the jurisdictional defense, ACIC has the burden of "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). ACIC must show either that this particular cause of action arose from Handal's activities in or related to the forum state (specific jurisdiction)[14] or that he had continuous and systematic contacts within the forum state

12. *See also NASL, supra,* 94 F.R.D. at 310–11 (granting immunity serves "judicial administration by encouraging participation in arbitration proceedings free from the fear that doing so would subject one to the burden of a foreign court.").

13. The parties, subsequent to the hearing on these motions, submitted briefs on the issue of transient jurisdiction. ACIC cites, *inter alia, El–Maksoud v. El–Maksoud,* 237 N.J.Super. 483, 568 A.2d 140 (Ch.Div.1989), in support of the proposition that presence in New Jersey alone, regardless of contacts with the state, justifies service of and jurisdiction over Handal. The Court notes, however, that federal—not state—law governs the immunity determination. Immunity is a procedural phenomenon, not a substantive one.

*See, e.g., Viking Penguin, Inc., supra,* 98 F.R.D. at 764 n. 1; *Spelbrink v. Jacobs,* 79 F.R.D. 531, 533 (D.Conn.1977). In the matter *sub judice,* Handal's challenge to service rests upon the fact that he was in New Jersey to aid the Court in the underlying litigation. As such, the Court finds that any argument as to transient jurisdiction raised to rebut the immunity theory in this case is illusory. To apply the transient jurisdiction doctrine in this matter would be to deny the existence and applicability of immunity entirely. As such, the Court shall not consider transient jurisdiction further.

14. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

**898**

(general jurisdiction).[15] *Id.* at 437; *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541 (3rd Cir.1985). Essentially, the Court must ask "whether the 'quality and nature' of [Handal]'s activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (quoting *International Shoe Co. v. Washington, supra,* 326 U.S. at 316–317, 66 S.Ct. at 158–159).

■ It is well established in the Third Circuit that the plaintiff must show significantly more than minimum contacts to establish general jurisdiction. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d at 437; *Dollar Sav. Bank v. First Sec. Bank of Utah,* 746 F.2d 208, 212 (3rd Cir. 1984). ACIC must prove that Handal's contacts with New Jersey were continuous and substantial. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d at 437.

■ ACIC simply cannot meet this standard. Handal is a citizen of Panama and a resident of Panama City. Handal Aff. ¶ 2. He has never owned real estate or possessed any assets in New Jersey. Handal Aff. ¶ 6. He has never engaged in the insurance or reinsurance business in New Jersey, nor has he ever maintained an office, employees, or any agent in New Jersey. Handal Aff. ¶ 3. He has never advertised nor had a telephone listing in New Jersey. Handal Aff. ¶ 4. In addition, he has never solicited ACIC's business in New Jersey. Handal Aff. ¶ 5. The only contacts with New Jersey cited by ACIC deal with Handal's role as a coordinator in the underlying litigation. In this role as coordinator, Handal travelled to New Jersey three times in 1994, including the December trip for his deposition. These three trips to New Jersey in connection with the first lawsuit simply do not amount to continuous and substantial contacts with the state of

New Jersey. ACIC's general jurisdiction argument thus fails.

■ Next, ACIC claims that the application of specific jurisdiction is appropriate because Handal's alleged fraudulent misrepresentations damaged ACIC's New Jersey business. The Third Circuit has held that "[a] court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." *Carteret Sav. Bank, F.A. v. Shushan, supra,* 954 F.2d at 148. Thus, this Court in its discretion may allow or deny the exercise of specific jurisdiction over Handal on the basis of his alleged knowledge or approval of certain fraudulent misrepresentations regarding PLAR's agreement to indemnify ACIC. In the instant case, however, the exercise of specific jurisdiction over Handal would be inappropriate.

The present case differs from those cited by ACIC.[16] In the cited instances, the defendants were accused of committing tortious acts or making fraudulent misrepresentations. In the instant case it was not Mr. Handal, but an entirely separate individual, who was accused of making fraudulent misrepresentations regarding PLAR's agreement to indemnify ACIC. ACIC alleges only that Mr. Handal was aware of and approved of such alleged misrepresentations. (Complaint ¶¶ 106–7).

If this Court were to permit the exercise of specific jurisdiction in this case, it would greatly expand the scope of specific jurisdiction. To secure specific jurisdiction over a non-resident, all ACIC, or any other plaintiff, would have to allege is knowledge or approval of a tortious act. An allegation by the plaintiff that a non-resident, like Mr. Handal, actually committed the tortious or fraudulent act would no longer be necessary for the exercise of specific jurisdiction. Specific jur-

---

**15.** *Provident Nat'l Bank, supra,* 819 F.2d at 437.

**16.** *Carteret, supra; Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (nonresident's extra-territorial conduct directly damaged resident plaintiff); *Moore v. St. Paul Co., Inc.,* Civ. No. 94–1329, 1995 WL 11187 (D.N.J. Jan. 3, 1995) (ditto); *Leonardo Da Vinci's Horse, Inc. v.*

*O'Brien,* 761 F.Supp. 1222 (E.D.Pa.1991) (ditto); *Covenant Bank For Sav. v. Cohen,* 806 F.Supp. 52 (D.N.J.1992) (ditto). These cases turn on affirmative acts by the defendant leading the defendants to reasonably anticipate being haled into the forum to account for the consequences of those acts.

isdiction is inappropriate where there are not sufficient contacts to create general jurisdiction, and the only contention for specific jurisdiction is that an individual was aware of and approved of such alleged misrepresentations. Acquiescence, even if properly established, will not suffice. ACIC's specific jurisdiction arguments fail.

## III. Jurisdictional Discovery

ACIC contends that if jurisdiction has not yet been established, ACIC ought to be permitted to conduct jurisdictional discovery to further probe Handal's ties, if any, to New Jersey, and cure the defect.

 While jurisdictional discovery is ordinarily allowed, ACIC's request must be denied due to its frivolous jurisdictional claim. *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir.1983); *Fraley v. Chesapeake & Ohio Railway*, 397 F.2d 1 (3d Cir.1968). As stated above, Handal had never visited New Jersey prior to 1994; Handal travelled to New Jersey only three times, and these trips were in connection with his role as a coordinator of the underlying litigation; Handal has never maintained an office, employees, or agents of any kind in New Jersey, nor has he ever engaged in any type of business here; and he has never owned or possessed any personal property or assets of any kind in New Jersey. Handal Aff. ¶¶ 3, 6, 7, and 8. Moreover, Handal is not a "total stranger" to ACIC in light of the involvement he has had, per ACIC's representations, in the underlying litigation. *See Compagnie des Bauxites*, 723 F.2d at 362; *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984) (jurisdictional discovery properly denied where plaintiff has had ample opportunity to take discovery of/depose defendant on the question of jurisdiction, and yet requisite contacts with the forum have not been established).

There is simply no showing as to why jurisdictional discovery should be allowed. Accordingly, ACIC's claim of jurisdictional discovery is denied.

## B. ACIC's communication with Lucky

On December 22, 1994, after ACIC served Handal, ACIC served Budd Larner, as counsel for the above-named Corporate defendants in the underling litigation, with summonses on the Corporate defendants in the instant case. Budd Larner refused to accept service for the Corporate defendants on the ground that although it served as their counsel in the underlying litigation, it was not authorized to accept service on their behalf in this case.

 On March 9, 1995, a few months after serving Handal[17] and Budd Larner, counsel for ACIC contacted William H. McGee & Company ("McGee"), defendant Lucky's New York branch office manager, to advise that ACIC was going to serve Lucky in this action. John Iacono ("Iacono") serves as general counsel for William H. McGee & Co. and is also an officer of Lucky. Iacono agreed to accept service by mail on the condition that Lucky maintain all its rights as if service was performed personally.

 Lucky attacks ACIC's communications with Iacono as being *ex parte*, and seeks sanctions. The Court cannot so hold. ACIC communicated with Iacono as a representative of Lucky solely to query whether he and McGee would accept service of on behalf of Lucky.

 According to Rule 4(d)(3) of the Federal Rules of Civil Procedure, a managing or general agent of a corporation is authorized to accept service of process. Fed. R.Civ.P. 4(d)(3). McGee manages all affairs for Lucky's New York branch office. *See Best's Insurance Reports* at 2097–2098 (1994 ed.). Counsel for ACIC called McGee's gen-

---

**17.** As set forth above, service on Handal was inadequate. Moreover, service on Handal was in his individual capacity, and did not indicate that it was meant as service upon the Corporate defendants through Handal as their managing or general agent. As such, ACIC cannot later claim, as it does in its papers, that the Handal service constituted service on the Corporate defendants in this action. *See* Fed.R.Civ.P. 4(a) and (b); *Grand Entertainment Group v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir.1993) (technicalities of Rule 4 are sacrosanct). In any event, that issue is now moot. *See* footnote 2.

eral counsel to advise him that ACIC would be sending over a process server to serve Lucky in this action. (Peim Certif., ¶ 17). As general counsel for McGee and as an officer of Lucky, Iacono agreed to accept service of process by mail. He had authority to do so.[18]

Lucky now asks the Court to penalize counsel for ACIC on the ground that any contact with Lucky or its managing agent constituted an *ex parte* communication, in violation of Rule 4.2 of the Rules of Professional Conduct. Lucky's argument is misplaced: it confuses form with substance. Rule 4.2 prohibits communication "about the subject of the representation" by an attorney with a represented party. Lucky's request for sanctions fails in that the communication at issue was with regard only to acceptance of service, and had no bearing to the subject matter of the action. Moreover, the communication at issue was with general counsel for McGee, who is himself a "professionally trained lawyer[,]" not likely to be coerced or confused into damaging concessions from which "the unshielded layman" is protected by Rule 4.2. *See Public Serv. Elec. & Gas v. Associated Elec. & Gas,* 745 F.Supp. 1037, 1039 (D.N.J.1990). As such, any imposition of sanctions upon ACIC would be improper.

## CONCLUSION

For the foregoing reasons, Handal's motion is granted and all claims against him are dismissed; and Lucky's motion for sanctions against ACIC is denied.

An appropriate Order was issued on September 27, 1995 and is annexed to this Amended Opinion for reference purposes.

### ORDER

**THIS MATTER** having come before the Court on defendant Juan Handal's ("Handal") motion to quash service of process and/or to dismiss all claims against him for lack of personal jurisdiction, and on defendant Lucky Insurance Company, Ltd.'s ("Lucky") motion for sanctions; and the Court having fully reviewed the parties' submissions, and having heard oral argument in the matter; and for good cause shown as set forth more fully in the accompanying Letter Opinion;

**IT IS** on this 27th day of September, 1995,

**ORDERED** that service upon Handal be and the same hereby is **QUASHED;** and it is further

**ORDERED** that Lucky's motion for sanctions against American Centennial Insurance Company and its counsel be and the same hereby is **DENIED.**

---

**18.** The actual service upon Lucky is now a moot issue in that ACIC's claims against Lucky and the Corporate defendants herein have since, with the Court's approval, been asserted as crossclaims in the underlying litigation. *See* footnote 2.