**DEVAULT OF DELAWARE, INC.**

v.

**OMAHA PUBLIC POWER DISTRICT.**

Civ. A. No. 85–6328.

United States District Court,
E.D. Pennsylvania.

April 8, 1986.

William J. Brennan, King of Prussia, Pa., for plaintiff.

Frank J. Perch, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The defendant in this action, the Omaha Public Power District (hereinafter "OPPD"), seeks to have the plaintiff's action dismissed pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, transferred to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a). We shall first address the issue raised by the defendant's assertion that this Court lacks personal jurisdiction.

The instant suit arises out of a contractual dispute between the two parties. Defendant OPPD originally contracted with a

corporation named Devault Equipment Company for the construction of a "Crawler Mounted Multi-Use Derrick" (hereinafter the "derrick"). The bid which was negotiated and accepted by OPPD had initially been placed by Hydraulic Industrial Products Co., a Missouri corporation with its principal place of business in Fenton, Missouri. Hydraulic's bid as accepted by OPPD provided for the assignment of Hydraulic's rights and obligations under the contract to Devault Equipment Company. Thus, while the bid OPPD accepted was made by Hydraulic, the contract itself was executed by Devault Equipment in Pennsylvania and then by OPPD in Nebraska. The derrick was to be shipped F.O.B. Papillion, Nebraska, with payment due upon delivery to and acceptance by OPPD. The contract is silent as to the place of performance, *i.e.,* where the derrick was to be manufactured, and is devoid of any choice-of-law provisions.

Devault Equipment Company, with the knowledge and approval of OPPD, subsequently assigned its rights and obligations under the contract to plaintiff Devault of Delaware. There is no relationship between Devault of Delaware and Devault Equipment Company despite the fact they bear similar names. Devault of Delaware then assigned its rights under the contract, with notice to and acknowledgement by OPPD, to the National Bank of Boyertown, Pennsylvania, thereby financing construction of the device.

Some time after the contract had been assigned to the plaintiff, a dispute arose as to the construction of the derrick. The documents attached to the plaintiff's memorandum in response to the defendant's motion to dismiss indicate that the plaintiff had failed to provide the defendant with certain "engineering drawings" prior to commencing "physical" construction of the derrick. (See plaintiff's memorandum, Exs. M–U). The defendant subsequently cancelled the contract on the ground that the plaintiff's action of commencing construction of the derrick without submission and approval of the engineering drawings described above had "resulted in the fabri-

cation and assembly of a unit with uncorrectable deficiencies that (could not) be accepted by the District ..." (*Id.,* Ex. U). Stated simply, the defendant claimed the plaintiff had failed to comply with the specifications of the contract.

During the period of dispute leading up to the cancellation of the contract, representatives of OPPD visited the plaintiff's Pennsylvania facility on two occasions. On July 15, 1985, Steven Anderson, OPPD's Supervisor of Equipment Specifications, visited the plant at the written invitation of G. Russell Miller, president of the plaintiff corporation. On October 4, 1985, Anderson and Robert Rase, Anderson's immediate supervisor, visited the facility after, as the defendant claims, the plaintiff had commenced physical construction of the derrick without producing the requisite drawings. (Defendant's motion to dismiss, Affidavit of F.N. Bousha, ¶¶ 19 and 20). These are OPPD's only "physical" contacts with Pennsylvania.

The plaintiff argues, based upon the facts that OPPD knew or should have known that the derrick would be manufactured in Pennsylvania, that the contract required extensive communications between the parties and that representatives of OPPD visited the plaintiff's plant in Pennsylvania on two occasions, that this Court possesses personal jurisdiction over the defendant. We disagree.

■ The determination of whether we possess personal jurisdiction over OPPD requires us to initially categorize the nature of the defendant's contacts with Pennsylvania, *i.e.,* did the cause of action arise from the defendant's forum-related or non-forum-related activities? "Special" or "transactional" personal jurisdiction exists where the cause of action arises from the defendant's forum-related activities and the defendant had sufficient contacts with the forum arising out of that transaction. "General" personal jurisdiction may be found where the defendant had "continuous and substantial" contacts with the forum, even though the action arises from

the defendant's non-forum-related activities. In either case, the burden is upon the plaintiff to come forward with facts in support of personal jurisdiction where the defendant has challenged same. *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3d Cir.1985) and *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587 (3d Cir.1982). Here, the defendant has stated by way of affidavit that it owns no real estate, maintains no offices, bank accounts or telephone listings, serves no customers and conducts no business in Pennsylvania, and the plaintiff has advanced no evidence or arguments to the contrary.[1] Therefore, we possess personal jurisdiction over the defendant, if at all, only in the nature of special or transactional jurisdiction.

For this Court to possess personal jurisdiction, the defendant's forum-related activities must be such that it would have reasonably anticipated being haled into Court in Pennsylvania, and further, there must "be some act by which the defendant purposely availed itself of the privilege of conducting activities within (Pennsylvania), thus invoking the benefits and protections of its laws". *Gehling,* 773 F.2d at 541, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See also, Burger King Corp. v. Rudzewicz,* 471 U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This entire analysis remains circumscribed by the principle that subjecting the defendant to personal jurisdiction should not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz, supra,* and *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The plaintiff argues that at the time the contract between the defendant and Devault Equipment Company was executed, the defendant knew or should have known that the derrick would be constructed in Pennsylvania, and, therefore, that any breach of the contract would have harmful consequences within this State. The plaintiff applies the same reasoning to the assignment of the contract by Devault Equipment Company to Devault of Delaware. From this, the plaintiff concludes that the defendant should have reasonably foreseen being subjected to the jurisdiction of the Pennsylvania courts. However, the Supreme Court has stated that the foreseeability of causing injury in another state is not a "sufficient benchmark" for exercising personal jurisdiction because such a mechanical rule does not insure that the requirements of due process are satisfied. *Burger King Corp. v. Rudzewicz,* 471 U.S. at ——, 105 S.Ct. at 2183, 85 L.Ed.2d at 542, *quoting World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Rather, the focus of the analysis is whether the defendant, by its conduct and connection with the forum state, should reasonably anticipate being haled into court there. Stated in another manner, a defendant may not be subjected to a state's jurisdiction solely as a result of "random", "fortuitous", or "attenuated" contacts. *Id.* The plaintiff's argument that, because the defendant knew that a breach of the contract would have harmful consequences within Pennsylvania, it may be subjected to the personal jurisdiction of this State is, therefore, without merit. While such knowledge on the defendant's part is relevant, it is but a piece of a much larger puzzle.

█ The Supreme Court in *Burger King Corp. v. Rudzewicz, supra,* stated that the following factors should be considered when analyzing whether the defendant purposely established minimum contacts within the forum: the prior negotiations leading to the contract, contemplated future consequences, the terms of the contract

---

1. The plaintiff in fn. 2 of its memorandum states that without the aid of discovery, it is unable to determine whether OPPD engages in activities in Pennsylvania which might subject it to general personal jurisdiction; however, the plaintiff has not requested that such discovery be allowed. Therefore, we deem the plaintiff to have conceded that the defendant does not maintain continuous and substantial contacts with Pennsylvania. Moreover, we are not permitted to authorize a "fishing expedition".

and the parties' actual course of dealings. 471 U.S. at ——–——, 105 S.Ct. at 2185–86, 85 L.Ed.2d at 545. The contract in this case was silent as to the place of performance. Thus, while the defendant might have surmised that the derrick would be constructed in Pennsylvania, such was not required, and the plaintiff would have been within its rights to manufacture the product anywhere it desired. Although the defendant "in a sense caused the activity in (Pennsylvania) by placing the order, the contract between the parties left (the plaintiff) in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally". *Lakeside Bridge & Steel v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 603 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).[2] *See also, Gehling, supra,* and *Tamaqua Cable Products Corp. v. Dunlap Electronics,* 531 F.Supp. 388 (E.D.Pa.1982). Further, the requirement that detailed engineering drawings be submitted to OPPD for approval prior to physical construction of the derrick obviated the need for on-site inspections. Finally, the termination of the contract occurred in Nebraska. *See Allegheny Ludlum Steel v. Pacific Gas & Electric Company,* 607 F.Supp. 35 (W.D.Pa.1984). Were these the only facts before us, we clearly would not have personal jurisdiction over the defendant. However, we must also consider the communications between the plaintiff in Pennsylvania and the defendant in Nebraska and the two visits by OPPD representatives to Pennsylvania.

■ The first visit by Anderson, as stated earlier, was made at the request of the plaintiff's president. The contract did not explicitly require that such inspections be made nor has the plaintiff established that such visits were implicitly necessary. It would appear that no such visit would have occurred had the plaintiff not failed to provide the defendant with the prescribed engineering drawings and had an officer of the plaintiff corporation not invited Anderson to Pennsylvania. The second visit by Anderson and Rase was similarly necessitated by the plaintiff's failure to produce the required drawings and its stated readiness "for final assembly and testing". (Affidavit of F.N. Bousha, ¶ 20). As stated by J.W. Stevens, a Purchasing Specialist with OPPD, in a letter prior to the visit, the purpose of the visit was to determine whether the problems which had arisen could be corrected without cancellation of the contract. (Plaintiff's Memorandum, Ex. S). Similarly, much of the communication between the parties was necessitated by the plaintiff's failure to submit the aforementioned designs. Given the nature of and quality of these visits, we do not believe a finding that the defendant purposely availed itself of the privilege of doing business within this forum may be premised upon these visits and communications in and of themselves or in combination with any other facts tending to show OPPD deliberately engaged in activities within this state. While we impute no improper motives to the plaintiff, we do not believe a defendant who attempts to resolve a contractual dispute should be penalized by a holding to the contrary where, absent such conduct aimed at resolution of the dispute, the defendant could not otherwise be subjected to the jurisdiction of the forum. While the visits are factors we must consider, their purpose discounts their significance to such an extent that they may be described as an "attenuated" affiliation with this State. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at ——, fn. 18, 105 S.Ct. at 2184, fn. 18, 85 L.Ed.2d at 543, fn. 18.

Finally, due to the method in which the contract came into being, we are also per-

**2.** The Seventh Circuit in *Lakeside Bridge & Steel v. Mountain State Construction Co., Inc., supra,* faced with a situation greatly analogous to this action, held that the district court lacked personal jurisdiction over the defendant even though the contract called for delivery of the goods in question F.O.B. the plaintiff manufacturer's place of business in the forum state. The defendant's arguments in this case are further supported, though perhaps not greatly, by the fact that the contract in question specified delivery of the derrick F.O.B. Papillion, Nebraska.

suaded that the defendant did not purposely direct its activities to this forum. The defendant originally sought bids for construction of the derrick from the general public. The bids were not directed at any particular entity or forum. When OPPD's attempts to obtain the device in this manner failed, it entered into negotiations with the lowest original bidder, Hydraulic, to obtain an acceptable contract. As stated earlier, Hydraulic is a Missouri corporation with its principal place of business in Missouri. These negotiations resulted in a "modified proposal" which provided for the assignment of the rights and obligations thereunder to Devault Equipment Company.

This chain of events is not, of course, completely analogous to the buyer-broker-seller triangle frequently found in the commercial world. *See e.g., Galaxy International, Inc. v. White Shoes, Inc.,* 88 F.R.D. 311 (W.D.Pa.1980). However, we deem it significant because of the fact that the defendant did not actively seek out the plaintiff, but rather, was put in contact with Devault Equipment Company by a third party, Hydraulic, which was the actual entity to submit the proposal accepted by the defendant. This fact, in combination with the totality of other circumstances in this case, demonstrates that the defendant OPPD did not purposefully establish minimum contacts within this forum and, therefore, it could not reasonably anticipate being taken into court in this State.

For all of the reasons above stated, the defendant's motion to dismiss will be granted.