**COLMEN FINANCIAL SERVICES**

**v.**

**CHARTER EQUIPMENT LEASING CORP., Larry Memel, and Richard Wilbur.**

Civ. A. No. 88–6249.

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

March 8, 1989.

Andrew B. Cohn, Philadelphia, Pa., for plaintiff.

Andrew O. Schiff, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Charter Equipment Leasing Corp., Larry Memel, and Richard Wilbur move to dismiss the complaint for lack of personal jurisdiction and, in the alternative, for summary judgment. F.R.Civ.P. 12(b)(2); 56(c). The record consists of the pleadings, affidavits, and exhibits. Jurisdiction is diversity. 28 U.S.C. § 1332. For the following reasons, the motion to dismiss has been granted.[1]

Plaintiff Colmen Financial Services is an unincorporated division of Colmen Management Company, a Pennsylvania corporation. A business broker located in Philadelphia, it provides consulting services and acts as an intermediary in corporate mergers and acquisitions. Charter was a California corporation with its principal place of business in Beverly Hills. It leased business equipment, including photocopiers, computers, and telephone systems. Memel was president, Wilbur was executive vice president, and they were Charter's sole shareholders.

In March, 1987 as the result of a mass mailing advertising Colmen's services, Memel telephoned Colmen to inquire about a sale or merger of Charter. Thereafter, Colmen's managing director flew to California to meet Memel and Wilbur. An agreement was drafted and signed by Colmen in Pennsylvania, and sent to California where, on June 30, 1987, it was signed by Memel and Wilbur. Under its terms Colmen became Charter's "exclusive financial advisor" in a merger or acquisition, to be compensated for its consulting services and costs together with a contingent brokerage fee based on a formula. Thereafter, Char-

ter sent payments to Colmen in Philadelphia.

Colmen prepared sales material, made telephone calls to locate buyers, and identified Oxford First, a Pennsylvania financial institution, as a potential prospect. Negotiations took place between Charter and Oxford First, and in May, 1987 Memel and Wilbur attended two days of meetings in Philadelphia. On June 17, 1988 Charter was sold to Cencor, a Delaware corporation. Colmen originally contacted Cencor, but did not take part in the sale negotiations. The complaint claims that defendants owe Colmen in excess of $75,000 under the contractual formula and that Charter has offered $10,000.

Asserting lack of personal jurisdiction, plaintiff Colmen bears the burden of demonstrating sufficient contacts with the forum state. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). Personal jurisdiction may be exercised over a nonresident to the extent permitted by state law.[2] F.R.Civ.P. 4(e); *Provident National Bank v. California Federal Savings and Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987).

Colmen asserts that this court has general jurisdiction over defendants. General jurisdiction exists when a defendant has contacts with the forum irrespective of the specific claim in suit. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 fn. 9, 104 S.Ct. 1868, 1872 fn. 9, 80 L.Ed.2d 404 (1984). It is established upon a showing that defendant was carrying on a "continuous and systematic" part of its business in the forum. *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952); *Provident*, 819 F.2d at 437. Required are "significantly more than mere minimum contacts." *Provident*, 819 F.2d at 437.

---

**1.** Accordingly, the motion for summary judgment is not reached.

**2.** The reach of the Pennsylvania long-arm statute is coextensive with the Due Process Clause of the United States Constitution. Pa.Cons.Stat. Ann.tit. 42, § 5322(b) (Purdon 1981); *Time Share*, 735 F.2d at 63. The demands of due process are met if the defendant purposefully

established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Time Share*, 735 F.2d at 63. The test is the same for individuals and corporations. *Burger King, supra* (individual); *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (corporate defendant).

Tax records disclose that in 1981 Charter leased equipment to two Pennsylvania companies and, in 1986, to one company with an office in Pennsylvania. The records are unclear whether the equipment was used in Pennsylvania and, if so, for what time period, or whether these alleged contacts still exist.

Colmen also points to Charter's relationship with Westinghouse Credit Corporation, a Delaware company, as evidence that Charter maintained substantial and ongoing activity in Pennsylvania. Charter assigned leases to Westinghouse through a California office. These transactions occurred during the periods from 1980 through 1984 and 1986 through 1987. Charter sent the lease documents to a Westinghouse office in California. Westinghouse collected the lease payments out of a Pennsylvania office. Charter's agreement with Westinghouse obligated Charter to "cooperate" with Westinghouse in the collection of payments.[3] Supplemental interrogatory answers, ex. 7, ¶ I.

Colmen's attempt to liken this assignment and collection relationship to that in *Provident National Bank,* 819 F.2d 434 (3d Cir.1987) is not well founded. There, defendant chose to maintain an account in a Pennsylvania bank specifically for the purpose of transacting daily business here. Charter, however, could not "reasonably anticipate being haled into court" in Pennsylvania merely because Westinghouse has an office in this state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); *Provident,* 819 F.2d at 438; compare *M.P.A. Inc. v. Avalon Pointe Marina, Inc.,* C.A. No. 87–5370, 1988 WL 46219 (E.D.Pa. May 9, 1988) (sufficient contacts to establish general jurisdiction).

There is no suggestion that Charter had any part in selecting the location of Westinghouse's collection activities. Without some connection to Charter, the Westinghouse office in Pennsylvania cannot form the basis for general jurisdiction. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873

("Such unilateral activity of ... a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.") The same can be said for Charter's relationship with First United Thrift Bank, a California bank that eventually became a subsidiary of a Pennsylvania institution. All of these contacts, added together, do not establish that Charter has consistently and systematically done business in Pennsylvania. *Perkins,* 342 U.S. at 438, 72 S.Ct. at 414; *Provident,* 819 F.2d at 437.

█ Colmen also invokes specific jurisdiction—that the facts of the claim itself support a finding of personal jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *USA Coil & Air, Inc. v. Cavalier Mechanical, Ltd.,* C.A.No. 86–3293, 1987 WL 4715, 1987 U.S. Dist. LEXIS 462 (E.D.Pa. January 27, 1987).

That Charter contracted with a Pennsylvania corporation is not enough to subject it to jurisdiction in this state. *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185; *USA Coil & Air,* LEXIS at 4–6. Other than the initial telephone inquiry, Charter did not reach out to plaintiff. Colmen distributed advertisements, traveled to California to market its services and actively pursued the relationship with defendants. Moreover, the work performed by plaintiff in Pennsylvania in order to sell Charter was unilateral activity on its part. The telephone calls emanating from Philadelphia and the locating of prospective buyers are not acts by which defendants purposefully availed themselves of the privilege of doing business in this forum. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183.

*Baron & Co., Inc. v. Bank of New Jersey,* 497 F.Supp. 534 (E.D.Pa.1980) is factually similar to this case. There, defendant was a New Jersey corporation that did not have contacts in Pennsylvania other than the brokerage contract and related activity on which the suit was based. Plaintiff, a business broker located in Pennsylvania,

---

**3.** The record does not show whether the assigned leases involved equipment in Pennsylvania. The implication is that the leases were nationwide.

became engaged in finding purchasers for defendant's New Jersey assets. Plaintiff drafted and executed the contract in Pennsylvania, then sent it to New Jersey where it was executed by defendant. The parties exchanged telephone calls and correspondence, defendant mailed plaintiff part payment, and plaintiff's performance occurred at its office in Pennsylvania. The decision held that this was unilateral activity and did not subject defendant to the court's jurisdiction. *Id.*, at 537–38.

In *Time Share,* plaintiff alleged that "[a]ll sales and promotional materials were to be and were in fact developed and designed at [plaintiff]'s Pennsylvania office." *Id.*, 735 F.2d at 64. Our Circuit stated that this was merely a recitation of plaintiff's unilateral activity, which was insufficient to establish minimum contacts. *Id.*, at 65; *see also Devault of Delaware v. Omaha Public Power District,* 633 F.Supp. 374, 377 (E.D.Pa.1986) ("Although the defendant in a sense caused the activity in Pennsylvania by placing the order, the contract between the parties left the plaintiff in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally."), *citing Lakeside Bridge and Steel v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 603 (7th Cir.1979), *cert. denied* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

Likewise, Colmen's solicitation of Pennsylvania investors was "unilateral." Defendants did not direct their activities toward forum residents. Colmen was expected to conduct a nationwide search. It was not instructed to concentrate on the Pennsylvania market. *See Reverse Vending Assoc. v. Tomra Systems US, Inc.,* 655 F.Supp. 1122, 1126 (E.D.Pa.1987) ("Although plaintiff purposefully directed its activities to Pennsylvania residents, this unilateral activity on its part cannot be imputed to defendant.")

█ The factors to consider in determining if jurisdiction may properly be based on a party's contractual relation with a forum resident are "prior negotiations and contemplated future consequences, along with

the terms of the contract and the parties' actual course of dealing...." *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185; *see also USA Coil & Air,* LEXIS at 5–6. Here, there was no mention in the contract of the place of the parties' performance. There was no choice of law clause, and the contract did not contemplate a long-term relationship as it did in *Burger King.* According to their answers to interrogatories, defendants originated some 40 telephone calls to Pennsylvania in the course of dealing with Colmen. Telephone records show 68 calls from Charter to Colmen between June 1987 and June 1988. These contacts also do not establish personal jurisdiction. *See Lakeside Bridge & Steel v. Mountain State Construction,* 597 F.2d at 604.

█ Memel's and Wilbur's visit to Pennsylvania is a jurisdictional factor. During the four-month negotiating period, there was one meeting in Philadelphia and one in California. But the fact that the individual defendants entered Pennsylvania is not determinative. *See USA Air & Coil,* LEXIS at 7–8. The nature and quality of the visit must be examined to decide whether they purposefully availed themselves of the privilege of doing business in this forum. *Devault,* 633 F.Supp. at 377.

█ Although Colmen was present, defendants' negotiations were with Oxford First, not Colmen. Colmen's present suit for a commission is not related to Oxford First. In *Devault, supra,* it was held that two visits of defendant's principals to Pennsylvania to resolve a contractual dispute did not subject defendant to jurisdiction. "While the visits are factors we must consider, their purpose discounts their significance to such an extent that they may be described as an 'attenuated' affiliation with this state." *Id.*, at 377 (citing *Burger King,* 471 U.S. at 475, fn. 18, 105 S.Ct. at 2184, fn. 18). *Compare Strick v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951 (E.D.Pa.1982) (defendant more than a passive purchaser, having initiated substantial purchases and having visited plaintiff's Pennsylvania plant).

Colmen argues that "[d]efendants advertised in an association newsletter believed to be distributed to its Pennsylvania members." Plaintiff's memorandum at 18. This assertion is not supported by the record, but even if it were, that fact would be insufficient to make out jurisdiction. *See Strick Corp.,* 532 F.Supp. at 956 (advertising in national industry journal that circulates in Pennsylvania does not provide basis for jurisdiction).

Colmen also points out that Cencor, which purchased Charter and presently employs Memel and Wilbur, does business in Pennsylvania. Although post-cause of action contacts may be considered on the issue of personal jurisdiction, see *M.P.A. Inc., supra,* the unrelated activities of an employer should not be imputed to an individual employee. Nor, for similar reasons, should the acts of a parent corporation be attributed to the subsidiary for purpose of assessing jurisdiction. *Reverse Vending Associates,* 655 F.Supp. at 1127–28. These are fact questions. The individual defendants, who reside and are employed in California, are not subject to jurisdiction in Pennsylvania merely because their employer does business here. That circumstance does not meet even a minimal fair warning requirement of due process. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.

On these facts, exercise of jurisdiction over defendants would also offend the "traditional notions of fair play and substantial justice" that are embodied in the Due Process Clause. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. There appears to be "a significant element of unfairness in requiring a [seller of a company based in California] to defend a case of this kind in the forum chosen by [its business broker in Pennsylvania]." *Burger King,* 471 U.S. at 487, 105 S.Ct. at 2190 (Justice Stevens, dissenting).