**MODERN MAILERS, INC. d/b/a Acxiom Mailing Services, Inc., Plaintiff,**

**v.**

**JOHNSON & QUIN, INC., Defendant.**

**Civ. A. No. 93–4409.**

United States District Court,
E.D. Pennsylvania.

Feb. 10, 1994.

Dale M. Heist, Steven J. Rocci, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, PA, for plaintiff.

Francine Friedman Griesing, Jay A. Dubow, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Defendant, Johnson & Quin, Inc. ("Johnson & Quin"), an Illinois corporation, has moved to dismiss the declaratory judgment action filed by the plaintiff, Modern Mailers, Inc. ("Modern Mailers"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Johnson & Quin bases its motion to dismiss on lack of personal jurisdiction over the defendant and improper venue. Alternatively, Johnson & Quin has moved for a transfer of the action to Northern District of Illinois. For the reasons set forth below, the court will grant defendant's motion to dismiss and deny its motion to transfer venue.

## I. BACKGROUND

Plaintiff is seeking a declaratory judgment that it has not infringed on a patent owned by the defendant. The patent at issue relates to an apparatus and method for assembling mass mail items. In December, defendant sent a letter to Acxiom Corporation, the plaintiff's parent corporation located in Arkansas, warning of the plaintiff's possible infringement on Johnson & Quin's " '088" patent. Defendant's Memorandum, Exhibit C. The plaintiff's ultimate response was to file this action seeking declaratory judgment that it is not infringing upon the '088 patent.

Johnson & Quin is an Illinois corporation that conducts most of its business in Illinois. It is in the business of selling business forms, direct marketing, print and data services, and laser printing technology. *See* Defendant's Memorandum, Exhibit B, Declaration of David Henkel at ¶ 3; Plaintiff's Memorandum, Exhibit A, Henkel Deposition at 34, 46, 51, 157–58. The defendant has no office or facility in Pennsylvania, does not own or maintain personal or real property in Pennsylvania, and has no license to do business within Pennsylvania. Declaration of David Henkel at 2. The defendant has, however, sold over $231,000 worth of its goods and services in Pennsylvania from 1990 to 1993. *See* Plaintiff's Memorandum, Exhibit A, Deposition of David Henkel at 31–32, 54, 63–64, 72; Declaration of David Henkel at ¶ 8. In his deposition, David Henkel, the president of Johnson & Quin, stated that the following were the sales in Pennsylvania and their approximate percentage of the company's total sales for the respective years: 1990— $106,922 (less than .50% of total sales); 1991—$57,056 (.25%); 1992—$51,999 (.20%); and 1993—$15,895 (.10%). *See Id.* These goods and services were sold to approximately 29 different customers in Pennsylvania, many of whom were repeat customers.[1]

---

1. Plaintiff also claims that in 1990 Johnson & Quin made three mailings to 241 potential and existing customers in Pennsylvania. Plaintiff's Memorandum at 16. The court has found no evidence to support this statement among the submitted affidavits and declaration. Plaintiff cites to a 33 page list of companies with addresses in Pennsylvania and the accompanying letter from the defendant's attorney, which merely states that the list was referred to during the depositions. *See* Plaintiff's Memorandum, Exhibits E and F. Clearly, the plaintiff has not borne its burden of proof through "sworn affidavits or other competent evidence." *North Penn Gas, Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.). Furthermore, plaintiff asserts that the defendant advertised in a national trade publication that circulated in Pennsylvania and

Plaintiff's Memorandum, Exhibit A, Deposition of David Henkel at 34–64, 145–52, 197–98, 212–19. Although Johnson & Quin has no sales force assigned exclusively to Pennsylvania, seven salespersons employed by the defendant between 1990 and 1993 had Pennsylvania included among the states of their assigned sales territory. *See* Henkel Deposition at 94–110, 121–56, 195–207, 210–27. Most of these salespersons were employed for only a portion of 1990–93 and their sales territories were quite large, often encompassing the entire United States. *Id.*

## II. LEGAL STANDARDS

■ Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). The plaintiff must support this burden through "sworn affidavits or other competent evidence." *North Penn Gas, Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.) (quoting *Time Share,* 735 F.2d at 67 n. 9), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990).

■ Personal jurisdiction may be either specific or general. Specific jurisdiction applies to claims which arise out of the defendant's forum related activities. General jurisdiction applies to claims which need not arise out of the defendant's forum related activities, but the defendant has such extensive contacts with the forum state that the defendant is continually subject to the state's personal jurisdiction. *Bane v. Netlink, Inc.,* 925 F.2d 637, 639 (3d Cir.1991); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). In its brief opposing the motion to dismiss, the plaintiff argues that the court has general jurisdiction over the defendant. Plaintiff's Memorandum at 7. Plaintiff does not assert that the cause of action arose out of the defendant's Pennsylvania related activities. The court, therefore, will only consider whether it has general personal jurisdiction over the defendant.

■ A federal district court's personal jurisdiction over a nonresident of the state in which the court sits is controlled by the laws of that state. Fed.R.Civ.P. 4(e). Under Pennsylvania's long-arm statute, a court has general jurisdiction over a foreign corporation if the corporation carries on "a continuous and systematic part of its general business within" Pennsylvania. 42 Pa.Cons.Stat. Ann. § 5301(a)(2)(iii).

■ Because this a patent law action, the due process clause of the fifth amendment, instead of the fourteenth amendment's due process clause which would apply to diversity actions, limits the reach of Pennsylvania's long-arm statute. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). However, due process under either amendment limits the long-arm statutes in the same manner. *Id.* The due process clause prevents a court from exercising personal jurisdiction over a defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)·(quoting *Milliken v. Myer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The defendant's contacts with the forum state must rise to a level such that the defendant would be able to reasonably anticipate being haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ The minimum contacts standard, however, is only the first step in evaluating general jurisdiction. In order to establish general jurisdiction, the plaintiff must show significantly more contacts with the forum state than the mere minimum contacts required for specific jurisdiction. *Dollar Sav.*

attended a trade show in Pennsylvania in 1990. Plaintiff's Memorandum at 16. Plaintiff cites to pages in Mr. Henkel's deposition that were not submitted to this court. The court, therefore, will not rely on plaintiff's unsupported assertions of these facts.

*Bank v. First Sec. Bank of Utah,* 746 F.2d 208, 212 (3d Cir.1984); *Reliance Steel,* 675 F.2d at 589. Due process requires that a court can exercise general jurisdiction only over a defendant who has maintained "continuous and substantial" contacts with the forum state.[2] *Reliance Steel,* 675 F.2d at 588 (citing *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877 (3d Cir.1981)). The issue, then, is whether Johnson & Quin conducted continuous, substantial and systematic business within Pennsylvania such that it may be subject to personal jurisdiction in Pennsylvania for any cause of action.

## III. DISCUSSION

### A. Jurisdiction

Johnson & Quin maintains that it lacks the requisite level of contacts with Pennsylvania to be subjected to personal jurisdiction. Defendant contends that the few contacts it has had with Pennsylvania over the years have been "irregular and attenuated at best." Defendant's Memorandum at 6. Plaintiff, however, claims that the defendant's contacts with Pennsylvania between 1990 and 1993 demonstrate that the defendant carried on continuous and systematic business within Pennsylvania.

▬ Preliminarily, the defendant argues that the relevant time period for determining whether it has sufficient contacts with Pennsylvania should not be 1990 to 1993, but December, 1992 to the summer of 1993. The defendant asserts that this is the only relevant period of time because all of defendant's actions of which plaintiff complains occurred during this time. Defendant's Reply Memo-

randum at 4–6. The defendant claims that general jurisdiction may only be based on those contacts that occurred at the same time as the activities which gave rise to the lawsuit.[3] Unlike specific jurisdiction, however, general jurisdiction is not related to the activities that gave rise to the lawsuit. Although general jurisdiction must exist at the time the cause of action arises, the court's examination of forum contacts is not limited to those that coincided with the activities that gave rise to the lawsuit. General jurisdiction is based upon the relationship that the defendant has with the forum state independent of the lawsuit. That relationship is tested by examining whether the defendant, in the case of a foreign corporation, conducted a "continuous and systematic" part of its business within the forum state. *See* 42 Pa.Cons.Stat. Ann. § 5301(a)(2)(iii). To determine whether a defendant conducted a continuous and systematic part of its business in the forum state, it is necessary to look at the defendant's activities within the state over a period of time. Johnson & Quin's version of general jurisdiction would often make it impossible for a court to determine whether sufficient contacts exist. For example, if a foreign corporation is sued in Pennsylvania for negligently causing an accident that occurred in another state, general jurisdiction over that defendant would be determined, under Johnson and Quin's analysis, by examining only those contacts the defendant had with Pennsylvania on the day of the accident. Obviously, a court could not accurately determine whether the corporation conducted continuous and systematic business within Pennsylvania by looking solely at the contacts of one day. A court must examine the contacts over a reasonable period of time to determine whether general jurisdiction existed when the action arose. Plaintiff asserts that

---

**2.** Courts have interpreted § 5301's "continuous and systemic" standard to be the equivalent of the "continuous and substantial" language used in the case law which delineates general personal jurisdiction. *See Derman v. Wilair Servs., Inc.,* 590 A.2d 317, 323 n. 3 (Pa.Super.1991); *Gulentz v. Fosdick,* 320 Pa.Super. 38, 466 A.2d 1049, 1054 (1983).

**3.** Defendant relies on *Mobay Chem. Corp. v. Air Prods. and Chemicals, Inc.,* 290 Pa.Super. 489, 434 A.2d 1250 (1981) for this proposition. *See*

Defendant's Reply Memorandum at 5. The defendant's reliance on this case is misplaced, however, because the court in *Mobay* examined the defendant's contacts that occurred within a time period that did not coincide with the activities that gave rise to the cause of action. The court in *Mobay* examined defendant's Pennsylvania contacts from 1973 to 1976. The activities that gave rise to the cause of action in *Mobay* occurred in February, 1975 and on January 31, 1978. *Mobay Chem.,* 434 A.2d at 1251.

the relevant time period dates back to 1985, but bases its response to defendant's motion on the period 1990 to 1993 in an effort to expedite the proceedings and because these were the years to which Mr. Henkel referred in his deposition testimony. Plaintiff's Memorandum at 3 n. 3. The period from 1990 to 1993 is a reasonable period of time from which to determine whether the defendant had continuous and systematic contacts with Pennsylvania.

Plaintiff argues that Johnson & Quin's sale of over $230,000 worth of products and services in Pennsylvania from 1990 to 1993 amounts to "continuous and substantial" business. *See* Plaintiff's Memorandum, Exhibit A, Deposition of David Henkel at 31, 54, 63–64, 72. Although defendant's Pennsylvania sales amount to less than .5% of the defendant's total sales for that period, they may nonetheless, along with other contacts, be enough to establish personal jurisdiction if that small percentage of sales represents continuous and systematic business within the forum state. *See Provident Nat'l Bank v. California Fed. Sav. and Loan Ass'n*, 819 F.2d 434, 437–38 (3d Cir.1987); *Amp, Inc. v. Methode Elecs., Inc.*, 823 F.Supp. 259, 264 (M.D.Pa.1993). Here, however, the defendant's Pennsylvania sales do not rise to the level of continuous and substantial.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court held that Texas did not have general jurisdiction over the defendant even though the defendant negotiated a contract there, purchased 80% of its helicopters in Texas, purchased $4 million worth of parts and accessories in Texas and sent personnel to train in Texas. *Id.* 466 U.S. at 411, 104 S.Ct. at 1870–71. The Court found that these activities did not constitute "continuous and substantial" business contacts with Texas.

In contrast to this, the Court of Appeals for the Third Circuit, in *Provident National Bank*, held that Pennsylvania had general jurisdiction over a California bank whose only contacts with Pennsylvania consisted of having .066% of its depositors in Pennsylvania (700–1000 depositors), receiving .071% of its deposits from Pennsylvanians ($10 million in deposits), and having .083% of its outstanding loans to Pennsylvania residents ($10 million in outstanding loans). However, it also maintained a continuous "controlled disbursement" account with a Pennsylvania bank for the daily disbursement of checks in Pennsylvania. This account was a "zero balance" arrangement whereby the Pennsylvania bank notified the California bank every business day of the total amount of checks cleared through the account that day, and the California bank wired a transfer of funds for that amount the same day. *Provident National Bank*, 819 F.2d at 436. The court in *Provident National Bank* stated that neither the percentage of business in the forum state, nor the absolute amount of sales and customers in the forum state is dispositive proof of "continuous and systematic" activity. *Id.* at 438. Rather, the factor more indicative of "continuous and systematic" business activity is the nature of the contacts with the forum state. The court found that the most critical contact was the Pennsylvania bank account through which the defendant made daily disbursements and which constituted a "substantial, ongoing and systematic" activity in Pennsylvania. *Id.* The Third Circuit pointed out that in *Helicopteros* the activities in Texas were not central to the defendant's business of providing helicopter service for South American oil and construction companies. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In *Provident National Bank*, however, the "borrowing and lending of money [was] the bread and butter of [the defendant's] daily business." *Id.* The contact that the court found to be most critical to its finding of general jurisdiction, however, was the fact that the defendant conducted business daily with the Pennsylvania bank which held its disbursement account. It was this contact that the court found to be a "continuous and central part" of the defendant's business. *Id.* The court reasoned that conducting central business functions within a forum state creates an expectation of being haled into court in that state. *Id.*

The facts of the present case are different from those of *Provident National*

*Bank.* Like *Provident,* the percentage of Johnson & Quin's business in Pennsylvania is small and the activity conducted in Pennsylvania is the "bread and butter" of the defendant's business. Johnson & Quin's sales of its goods and services, like California Federal's borrowing and lending of money in *Provident National Bank,* was the principle purpose of its business. But the court in *Provident* did not find that these activities by themselves created general jurisdiction. The *Provident* court found that the defendant's maintenance and daily use of a bank account in Pennsylvania was the critical contact for establishing general jurisdiction. *Provident National Bank,* 819 F.2d at 438. Johnson & Quin has no such daily or regular contact with Pennsylvania that is central to the functioning of its business. Just as the number of Pennsylvania loans in *Provident* would not have been sufficient by themselves to form a basis for general jurisdiction, so too Johnson & Quin's Pennsylvania sales are insufficient by themselves to support a finding of continuous and systematic business.

Other courts have dealt with different factual patterns in determining whether a defendant has engaged in continuous and systematic business with a forum state and used a slightly different approach. In *Strick Corp. v. A.J.F. Warehouse Distribs., Inc.,* 532 F.Supp. 951 (E.D.Pa.1982), the court found that it did not have general jurisdiction over the defendant because the defendant's contacts with Pennsylvania were not "continuous and systematic." *Id.* at 956. Among the contacts that the defendant had with Pennsylvania were the following: it entered into leases with Pennsylvania companies, it maintained offices in Pennsylvania from 1972 to 1976 (three years before the cause of action arose), it had the right to repossess trucks in Pennsylvania that it had sold, and it placed ads in a national trade journal that circulated in Pennsylvania. *Id.* In concluding that the defendant was not subject to the court's general jurisdiction, the court stated that general jurisdiction is usually found "where a non-resident defendant makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market." *Id.* (citing *Schwilm v. Holbrook,* 661 F.2d 12, 14

(3d Cir.1981); *Galaxy Int'l, Inc. v. White Stores, Inc.,* 88 F.R.D. 311, 324–25 (W.D.Pa. 1980); *Garfield v. Homowack Lodge,* 249 Pa.Super. 392, 378 A.2d 351, 354–55 (1977)).

Applying this general rule to the present case, yields the conclusion that Johnson & Quin's Pennsylvania contacts were not continuous and systematic. The defendant's $230,000 in direct sales to Pennsylvania (less than .5% of its total sales) cannot be described as "substantial" in light of the amount of sales which other courts have found to be not substantial. *See Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494 (M.D.Pa.1992) (defendant's sale of 1% of its products in Pennsylvania was not "substantial"); *Derman v. Wilair Servs., Inc.,* 404 Pa.Super. 136, 590 A.2d 317, *appeal denied,* 529 Pa. 621, 600 A.2d 537 (1991) (finding no substantial and continuous business even though defendant did 1.5% of its business with Pennsylvania residents). Johnson & Quin did not regularly solicit business in Pennsylvania. Although some of its salespersons solicited business in Pennsylvania, they did not do so on a regular basis. In fact, there is evidence that many of the Pennsylvania sales were unsolicited telephone orders. Henkel Deposition at 48–50. There has been no evidence submitted that Johnson & Quin advertised in a way specifically targeted at Pennsylvania. Under the general rule set forth in *Strick,* Johnson & Quin has not conducted continuous and systematic business in Pennsylvania.

Another case that demonstrates the activities needed to substantiate a finding of continuous and systematic business is *Gulentz v. Fosdick,* 466 A.2d 1049 (Pa.Super.1983). In *Gulentz,* the defendant was a trucking company whose trucks drove a total of 2.5 million miles in Pennsylvania in 1980. The defendant purchased 500,000 gallons of fuel in Pennsylvania and had gross receipts totalling $750,000 from business conducted in Pennsylvania, which amounted to 3.7% of its total gross receipts. The court found that the defendant's extensive use of Pennsylvania highways in order to further its business interests indicated that the defendant purposely availed itself of the privilege of conducting business in Pennsylvania. *Id.* 466

A.2d at 1053 (citing *Kenny v. Alexson Equip. Co.*, 495 Pa. 107, 432 A.2d 974 (1981)). The court also noted that although the defendant's gross receipts from Pennsylvania were only 3.7% of its total gross receipts, this is to be expected because the defendant operated in all 48 states of the continental U.S. Comparing these facts to the present case, the court finds that Johnson & Quin's contacts with Pennsylvania are less substantial. Johnson & Quin has not made an extensive use of any Pennsylvania resource such as the highway system. Also, there is no evidence that Johnson & Quin conducts business equally in a large number of states. This makes its percentage of Pennsylvania sales (less than .5%) even less substantial in comparison to the 3.7% found in *Gulentz.*

A case with facts similar to those of the present case is *Derman v. Wilair Servs., Inc.*, 404 Pa.Super. 136, 590 A.2d 317 (1991). In *Derman,* the court found that the defendant did not engage in continuous and systematic business with Pennsylvania. *Id.* at 324. The defendant's Pennsylvania contacts consisted of the following: it advertised in national publications that circulated in Pennsylvania, 1.5% of its business was with Pennsylvania residents and it bought .3% of its parts from Pennsylvania vendors. *Id.* The court found that the small amount of Pennsylvania business was not "continuous and substantial." *Id.* In comparison, Johnson & Quin did even less of its business with Pennsylvania residents and there is no evidence that it bought anything from Pennsylvania vendors.

The court finds that Johnson & Quin did not carry on a "continuous and systematic part of its business" within Pennsylvania. Therefore, the defendant may not be subject to the general jurisdiction of this court.

## B. Venue

■ The defendant also claims that venue is improper. Under 28 U.S.C. § 1391(b), venue is proper if the action is brought in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

28 U.S.C. § 1391(b). For purposes of venue, a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). The court has determined that the defendant is not subject to personal jurisdiction within this district. The defendant, therefore, cannot be deemed to reside in this judicial district. The events that gave rise to this action did not occur in Pennsylvania. If they had, the plaintiff would have urged the court to find *specific* jurisdiction over the defendant. The third basis for venue is inapplicable because the action could have been brought in the Northern District of Illinois, the district in which the defendant resides. *See* Declaration of Henkel at ¶ 3. Because none of the bases for venue exist in this case, venue within this judicial district is improper under section 1391(b).

The issue that remains is whether to dismiss the claim or transfer it to a judicial district that would have personal jurisdiction over the parties. Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[4] Oftentimes, plaintiff makes a motion to transfer as an alternative to complete dismissal if the court fails to find jurisdiction over the defendant. In this case, however, the defendant has brought the motion to transfer. In its brief, the plaintiff opposes the transfer of the case to any district, arguing that it would inconvenience the plaintiff and its witnesses. Plaintiff's Memorandum at 19–21. In *Car-*

---

4. Additionally, section 1631 states that if a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought." 28 U.S.C. § 1631.

*teret Sav. Bank, F.A. v. Shushan,* 919 F.2d 225 (3d Cir.1990), *cert. denied,* — U.S. —, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992), the Court of Appeals for the Third Circuit held that a district court erred in transferring, pursuant to § 1406(a), a claim over the objections of the plaintiff. *Id.* 919 F.2d at 230–32. The court in *Carteret* viewed a transfer under § 1406 as a means of protecting the plaintiff from the harsh result of dismissal of its case based solely on the fact that it was brought in the wrong district. If a plaintiff opposes such a transfer, the court has no purpose in forcing the plaintiff to litigate its claim in another court. *Id.*

If the motion to transfer had been made by the plaintiff, the court would have granted it so that the plaintiff would not lose its day in court simply because it filed the claim in the wrong district. The plaintiff, however, opposes transfer of the action and the court will honor the plaintiff's choice of forum or, in this case, rejection of forum.

## IV. CONCLUSION

For the reasons set forth above, the court will grant defendant's motion to dismiss for lack of personal jurisdiction and improper venue. The court will deny the defendant's motion to transfer venue.