**Mark H. GALLANT, Administrator of the Estate of William Ash Gallant, Deceased, Plaintiff,**

v.

**TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Defendant.**

No. CIV.A.00–2058.

United States District Court, E.D. Pennsylvania.

Sept. 2, 2000.

Mitchell J. Shore, Philadelphia, PA, for plaintiff.

Peter J. Lynch, Barbara L. Schmuck, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for Columbia University, defendant.

Richard S. Margulies, Peter J. Lynch, Barbara L. Schmuck, Chrsitie, Pabarue, Mortensen & Young, Philadelphia, PA, for Trustees of Columbia University in City of New York, defendant.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Now before the court is defendant Trustees of Columbia University in the City of New York's (Columbia)[1] motion for reconsideration of the court's order denying its Motion to Dismiss or to Transfer Venue. The court finds that it lacks personal jurisdiction over the defendant and that transfer to the Southern District of New York is appropriate.

### I. Background and Jurisdictional Facts

This action stems from the untimely death of William Ash Gallant, the teenage son of plaintiff Mark Gallant. The decedent, who suffered from a heart condition, was a patient of Dr. Welton M. Gersony from June 1998 until his death in August 1998. The plaintiff alleges that Dr. Gersony is an employee of Columbia who treated the decedent within the scope of his employment and that he can therefore recover against Columbia.[2] Dr. Gersony operated on William at the Presbyterian Hospital in New York City in June. A resident of Pennsylvania, William received post-operative care from Dr. Gersony in New York City on at least two occasions. The plaintiff alleges that, based on Dr. Gersony's recommendations, he and his wife cancelled William's previously scheduled July appointment with his regular pediatric cardiologist at the Children's Hospital in Philadelphia. While on vacation in New Jersey in August, William died, allegedly from complications stemming from the surgery performed by Dr. Gersony. The plaintiff filed suit in the Court of Common Pleas in Philadelphia

---

1. By stipulation, the parties substituted "The Trustees of Columbia University in the City of New York" for "Columbia University" as the named defendant in this action. *See* Stip. and Order of July 26, 2000 (doc. 16).

2. The plaintiff contends that Dr. Gersony has unequivocally admitted that he was acting in his capacity as an employee of the defendant when he treated William. While the court does not find Dr. Gersony's deposition testimony to be unequivocal, *see* Pl.Opp. to Mot. for Recons., Ex. 1 (Dr. Gersony Dep.), it declines to make a specific finding on this issue. For the limited purpose of this motion, however, it will assume that Dr. Gersony's treatment of the decedent was in his capacity as the defendant's employee and that Columbia may be properly held accountable for his and his associate's actions.

County, and the defendant timely removed the action to this court.

Columbia is a New York corporation, and its principal place of business is New York. The defendant does not own or lease any property in Pennsylvania. The plaintiff alleges that Columbia has the following contacts with this forum that allow the exercise of general jurisdiction over it: a student body that includes Pennsylvania residents whose tuition generates income for the school; collection actions filed by Columbia in the Commonwealth's Common Pleas Court; at least four trust accounts overseen by First Union National Bank in Philadelphia; fund raising and recruitment activities in Pennsylvania; participation by Columbia professors and other employees in conferences, visiting professorships, and other academic activities in Pennsylvania; participation in revenue-generating athletic events in this state; and research contracts or agreements to conduct clinical trials between the defendant and at least six pharmaceutical companies conducting business in Philadelphia. The defendant does not dispute that these contacts exist, but argues that they are not sufficient to allow general jurisdiction.

Alternatively, the plaintiff alleges that Dr. Gersony and his associates have numerous contacts with Pennsylvania that support the exercise of specific jurisdiction over Columbia. Prior to performing cardiac surgery on William, Dr. Gersony engaged in several phone calls with the Gallants. He also sent written materials to their home in the Philadelphia suburbs to encourage them to place their son under his care. During William's post-operative care, Dr. Gersony initiated a phone conversation with his regular physician in Philadelphia. When the Gallants called Dr. Gersony's office in July because William was experiencing pain and discomfort, one of Dr. Gersony's associates, also alleged to be a Columbia employee, interviewed William by telephone and then contacted Children's Hospital regarding his condition. In addition, after William's death, Dr. Ger-

sony contacted the Gallants in Pennsylvania by telephone and letter. He also sent a letter and medical summary to William's Philadelphia physician.

## II. Discussion

■ Columbia argues that this court does not have personal jurisdiction over it. It seeks dismissal of the action or, in the alternative, transfer to the Southern District of New York. Generally, the question of personal jurisdiction should be decided before a court turns to the issue of venue, unless there is a sound reason for deciding venue first. *See Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

### A. Personal Jurisdiction

■ A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where it sits. *See* Fed. R.Civ.Pro. 4(e); *see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992). Pennsylvania, like many other states, permits its courts to exercise personal jurisdiction over non-residents to the extent permitted by the due process clause of the fourteenth amendment. *See* 42 Pa.C.S. § 5322(b); *see also Mellon Bank (East),* 960 F.2d at 1221. Therefore, the pertinent inquiry is whether exercise of personal jurisdiction over Columbia violates the due process clause. *See id.* Under the due process clause, "a court may not assert personal jurisdiction over a nonresident defendant who does not have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citation, punctuation omitted)). These minimum contacts must be such that the defendant "should be reasonably able to

anticipate being haled into court in the forum state." *Provident Nat'l Bank,* 819 F.2d at 437.

■ When the defendant challenges the exercise of personal jurisdiction over it, the plaintiff bears the burden of demonstrating, with reasonable particularity, the extent and nature of the defendant's contacts with the forum. *See Gehling v. St. George's Sch. of Med., Ltd.,* 773 F.2d 539, 542 (3d Cir.1985). A plaintiff may meet this burden by establishing the court's general jurisdiction by virtue of the defendant's "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also Provident Nat'l Bank,* 819 F.2d at 437. Alternatively, a plaintiff may show that the court has specific jurisdiction because the particular cause of action arose from the defendant's forum-related activities. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. Here, the plaintiff here asserts that the exercise of either general or specific jurisdiction is proper.

### 1. General Jurisdiction

■ In the Third Circuit, a plaintiff must show more than mere minimum contacts before a court may exercise general jurisdiction. Rather, a nonresident's contacts "must be continuous and substantial." *Provident Nat'l Bank,* 819 F.2d at 437. When evaluating a corporation's ties to a forum, a court should look to that party's "purposeful and extensive availment" of the forum, *id.,* and consider the degree to which the corporation's contacts are "central to the conduct of its business." *Id.* at 438; *see also Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd.,* 64 F.Supp.2d 448, 450 (E.D.Pa.1999) (same).

This case is controlled by *Gehling,* in which the Third Circuit held that St. George's School of Medicine, a Caribbean institution, did not have a sufficient nexus to Pennsylvania to subject the school to general jurisdiction. *See* 773 F.2d at 542.

St. George's forum-related activities included advertising in national newspapers, such as the *New York Times,* that circulated in Pennsylvania; counting Pennsylvania residents among its student body; sending school representatives to Philadelphia as part of a "media swing" intended to raise St. George's profile; and entering into an agreement with a Pennsylvania college to establish a joint international program combining pre-medical studies in Pennsylvania with medical training in Grenada. *See id.* at 541–42. The court found that these contacts were insufficient. *See id.* at 542–43. It was particularly troubled by the notion that a school's student body, or the fact that it received funds from these students, could support jurisdiction:

> Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides.... For the same reason, the fact that St. George's may be said to derive some percentage of its revenue from Pennsylvania residents in return for services provided in Grenada does not subject it to *in personam* jurisdiction.

*Id.*

■ While the plaintiff here has presented more contacts than those considered by the Third Circuit in *Gehling,* none of these additional contacts demonstrate that Columbia has purposefully directed its activities to, or availed itself of, Pennsylvania. Rather these contacts are the result of Columbia's general participation in the type of interstate activity in which any nationally prominent educational institution would engage. In addition, the trust accounts that Columbia has with First Union are part of a common fund in which 1,200 universities participate. *See* Def. Supp.Mem. of Law in Support of Mot. for Recon., Ex. A at 34. First Union is the trustee, but the funds are kept in Boston by the custodian, Investment Bankers and

Trust. *See id.* at 29–30. Subjecting Columbia, or any of the other fund 1,200 members to jurisdiction in Pennsylvania on this basis runs counter to *Gehling's* recognition that a college or university may have contact outside of its home state not directly related to its educational purpose without necessarily subjecting itself to general jurisdiction in another state. *See Gehling,* 773 F.2d at 543 (holding that joint program with Pennsylvania college that did not generate education-related income for defendant is not a systematic and continuous contact).

Neither does Columbia's participation in sporting events in the Commonwealth establish a sufficient nexus with this forum: the plaintiff has not produced any evidence suggesting that Columbia's athletic activities are focused on Pennsylvania rather than a general involvement in interstate collegiate sports that includes events in this state. *See Stainbrook v. Kent,* 771 F.Supp. 988, 990 (D.Minn.1991) (holding that Louisiana State University's participation in basketball tournament in Minnesota did not subject it to personal jurisdiction in that state).

The plaintiff also alleges that Columbia's faculty and employees regularly travel to the Commonwealth to attend conferences, deliver lectures, and act as visiting professors. Because the defendant did not provide· specific information on the quantity of such activities in response to the plaintiff's interrogatories, the court will assume, as does the· plaintiff, that these activities are extensive. However, as in the case of athletic events, the plaintiff has not produced any evidence that suggests that Columbia or its employees have singled out Pennsylvania as opposed to generally participating in interstate academic activities that may take place in the Commonwealth. *Cf. Gelineau v. New York Univ. Hosp.,* 375 F.Supp. 661 (D.N.J. 1974) (holding that New York hospital was not subject to general jurisdiction in New Jersey even though some of its physicians were licensed to practice in, and some of

its· employees resided in, New Jersey). Similarly, there is nothing in the record to indicate that Columbia's research contracts and clinical trial agreements with Pennsylvania pharmaceutical firms are a result of Columbia's purposeful or extensive availment of this forum.

Finally, the plaintiff argues that courts in this Circuit have previously held that Columbia is subject to general jurisdiction. However, the cases cited by the plaintiff do not stand for that proposition. In *Wright v. Columbia University,* 520 F.Supp. 789, 795 (E.D.Pa.1981), Columbia did not challenge the court's jurisdiction, but rather argued that venue was improper. The court found that venue was controlled by the then-applicable version of 28 U.S.C. § 1391(c), which provided that a corporation may be sued in any judicial district in which it is "doing business." In holding that venue was proper, the court noted that the venue inquiry "demands a greater quantum of contacts than suffices to establish jurisdiction." *Id.* However, *Wright* involved a student who challenged Columbia's decision to bar him from its intercollegiate football program for medical reasons. For purposes of that case, the court narrowly defined Columbia's business as recruiting for its athletic programs, and all the Pennsylvania contacts examined by the court related directly to the school's recruitment of the student, implicating specific rather than general jurisdiction. In *Wright,* unlike in the instant case, Columbia purposefully directed activities to Pennsylvania in its pursuit of the student: its football coaches traveled to Pennsylvania to court the student, and the school arranged and financed the student's visit to its campus. *See id. Wright,* therefore, is not persuasive because it only indirectly addressed· specific, rather than general, jurisdiction. The other cases cited by the plaintiff do not discuss jurisdiction at all. In *Beachboard v. Trustees of Columbia University,* 815 F.2d 693 (3d Cir.1987), the Third Circuit affirmed the lower court without comment; the lower

court's opinion is unavailable. Although Columbia was a defendant in *United States v. Brown University,* 5 F.3d 658 (3d Cir.1993), neither that opinion, nor the lower court's decision that the Third Circuit reversed, *see* 805 F.Supp. 288 (E.D.Pa. 1991), contains any discussion of jurisdiction.

In sum, all the contacts upon which the plaintiff relies to support the exercise of general jurisdiction over Columbia are those in which any nationally prominent university would engage. The plaintiff's theory sweeps too broadly, as it would render Columbia and any similar institution subject to general jurisdiction in most, if not all, states. Because there is nothing in the record to indicate that Columbia has purposefully directed its activities to this forum such that it would reasonably anticipate being haled into court here, the exercise of general jurisdiction is not appropriate.

### 2. Specific Jurisdiction

■ The plaintiff argues that this court has specific jurisdiction over Columbia by virtue of the acts of Dr. Gersony and his associates. However, even assuming that these acts may be attributed to Columbia, they do not support the exercise of specific jurisdiction.

The weight of authority holds that when treatment is rendered outside the forum state, a nonresident medical provider cannot be subject to specific jurisdiction.

> When one seeks out services which are personal in nature, such as those rendered by ... physicians, dentists, [or] hospitals, ... and travels to the locality where he knows the services will actually be rendered, he must realized that the services are not directed to the impact

on any particular place, but are directed to the needy person himself.

.    .    .    .    .

It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek the services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

*Gelineau,* 375 F.Supp. at 667; *see also, e.g., Wright v. Yackley,* 459 F.2d 287, 290 (9th Cir.1972) (holding that there is no purposeful availment when treatment is provided outside the forum because the residency of the recipient of medical treatment is "irrelevant and incidental to the benefits provided by the defendant in his location"); *Bakaj v. Arthur Levine,* DDS, 733 F.Supp. 951 (E.D.Pa.1990) (exercise of specific jurisdiction over New Jersey dentists would violate due process clause); *Walters v. St. Elizabeth Hosp. Med. Ctr.,* 543 F.Supp. 559 (W.D.Pa.1982) (same holding regarding out-of-state medical provider); *Kurtz v. Draur,* 434 F.Supp. 958 (E.D.Pa.1977) (same); *Jamerson v. Buffalo Gen. Hosp.,* Civ.A. No. 94–264, 1995 WL 904576, at *2–4 (W.D.Pa. Mar. 14, 1995) (same).

Here, the plaintiff does not allege that Dr. Gersony initiated contact with him and his family regarding providing treatment to William.[3] Dr. Gersony performed surgery and treated the decedent in New York; he never traveled to the Commonwealth for the purposes of rendering medical care to William. The only medical treatment that William arguably received in Pennsylvania by a purported Columbia

---

**3.** The plaintiff alleges that Dr. Gersony "affirmatively solicited" his family. In context, that assertion implies, at the most, that the doctor actively advocated a specific type of medical treatment for William that he represented he and his colleagues were eminently qualified to provide. *See* Pls.Opp. to Mot. for

Recons., Ex. 11 ¶¶ 2–4 (Gallant Supp.Decl.). The plaintiff does not specify whether he and his family initially contacted Dr. Gersony, but states that "Dr. Gersony had evaluated William Ash Gallant in prior years as well, and had maintained a consulting physician relationship with the Gallants." *Id.* ¶ 2.

employee was the July telephone interview between William and one of Dr. Gersony's associates; this conversation was initiated by the Gallants. *Chicosky v. Presbyterian Med. Ctr.*, 979 F.Supp. 316, 319 (D.N.J. 1997) (holding that a single telephone call in which medical services were allegedly rendered was not a forum-directed activity; noting that medical services are directed to the person who seeks treatment rather than the forum). The other contacts upon which the plaintiff relies are incidental telephone and mail communications between Dr. Gersony and the Gallants. "The weight of authority among the courts of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 n. 3 (3d Cir.1998) (citing cases therein); *see also Jamerson*, 1995 WL 904576 at *2–3 (holding that arranging for tests in Pennsylvania and making telephone calls and sending mail related to treatment were not minimum contacts allowing the exercise of specific jurisdiction over out-of-state hospital).

■ Relying on *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the plaintiff also argues that because defendant's alleged actions caused damage in this forum, the exercise of specific jurisdiction is proper. "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum[.]" *IMO Indus.*, 155 F.3d at 260. However, in the Third Circuit, application of *Calder* requires satisfaction of a three prong test:

First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *Id.* at 256. Here, the plaintiff fails the first and third prong.[4] The plaintiff's complaint alleges only negligent, and not intentional, conduct by the defendant's employees or agents. *See* Compl. ¶ 16 (decedent's death "was caused solely and exclusively by reason of the negligence of the Defendant, its agents, ostensible agents, servants and/or employees"); *see also id.* ¶¶ 8, 17, 20, 27 (alleging negligence). As discussed previously, Pennsylvania cannot be said to be the focal point of defendant's allegedly tortious activity, as William was treated by defendant's alleged agents almost exclusively in New York and any mail or telephone communication directed to Pennsylvania was incidental to William's treatment in New York.

The plaintiff has failed to demonstrate that this court has specific jurisdiction over the defendant.

### B. Transfer[5]

Although Columbia does not specify under which provision it seeks transfer in its motion for reconsideration, its original motion sought transfer both for improper venue under 28 U.S.C. § 1406(a) and for the convenience of the parties under 28 U.S.C. § 1404(a). While not raised by the parties, the court will also consider whether this action may be transferred under 28

---

4. Given that William died in New Jersey, it is questionable whether even the second prong is satisfied.

5. Even though the court lacks jurisdiction, it may still transfer this action. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct.

913, 8 L.Ed.2d 39 (1962); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964); *Molnlycke Health Care AB v. Dumex Medical Surgical Products*, 64 F.Supp.2d 448, 454 n. 7 (E.D.Pa.1999).

U.S.C. § 1631, which allows transfer when jurisdiction is lacking. *See Chicosky*, 979 F.Supp. at 320–23 (holding that action could be transferred under section 1631, although neither party invoked that provision).

### 1. Improper Venue Transfer

■ A preliminary question is whether an action removed to federal court may be transferred for improper venue. The Supreme Court has held that when an action is removed, the removal statute, 28 U.S.C. § 1441, rather than the general venue statute, 28 U.S.C. § 1391,[6] governs the question of venue. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). Section 1441 provides in pertinent part that "any civil action brought in a State court of which district courts of the United States have original jurisdiction … may be removed by the defendant … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This action was originally filed in common pleas court in Philadelphia County and could only have been removed to this federal district. *See* 28 U.S.C. § 118(a) (providing that Eastern District includes Philadelphia County).

Nevertheless, even when venue is technically proper, as is the case here, other courts of appeal and some courts in this district have broadly construed section 1406(a) to allow a transfer when personal jurisdiction is lacking. *See Carteret Sav. Bank, FA v. Shushan*, 919 F.2d 225, 232, 232 n. 11 (3d Cir.1990) (citing cases so holding). The Third Circuit, however, has expressly declined to decide this question. *See id.* at 232 (noting that the question remains open); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964) (declining to resolve this issue). In the instant case, it is not necessary to decide whether the Third Circuit would generally interpret section 1406(a) expansively, as it has clearly held that where venue is proper but the court lacks jurisdiction, a plaintiff may not "be compelled to accept a transfer under section 1406(a) against its wishes." *Carteret*, 919 F.2d at 232; *see also Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F.Supp. 1048, 1055–56 (E.D.Pa.1994) (same). *Carteret* noted that in all the cases allowing transfer where venue was proper, the plaintiff had requested the transfer as an alternative to dismissal, and therefore the expansive reading of section 1406(a) was adopted "so that a plaintiff properly laying venue but unable to proceed in the transferor court because of jurisdictional problems does not lose its day in court by reason of the running of the statute of limitations in another forum." *Carteret Sav. Bank*, 919 at 231–32. Here, the plaintiff has objected to transfer,[7] and therefore section 1406(a) cannot

---

**6.** The general venue statute provides in pertinent part:
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

> .  .  .  .  .

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.
> 28 U.S.C. § 1391.

**7.** The plaintiff's Opposition to the Motion for Reconsideration (doc. 18) and its Reply to Defendant's Supplemental Memorandum of Law (doc. 20) only address the issue of personal jurisdiction. However, the plaintiff expressly incorporated its original memorandum in opposition in which it argued against transfer under both sections 1406(a) and 1404(a). *See* Pl.Opp. at 12–19.

be applied.[8]

### 2. Convenience Transfer

■ A court may transfer an action, for the convenience of the parties and witnesses, and in the interests of justice, to any district where the action might have been brought. *See* 28 U.S.C. § 1404(a). Venue for this action would be proper in the Southern District of New York, as the allegations in this case center on the care provided to the decedent in that district. *See* 28 U.S.C. § 1391(a).

In ruling on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (citations, punctuation omitted). The movant bears the burden of establishing the need to transfer, *see id.*, and a motion to transfer should not be granted if it will merely shift the inconvenience from the defendant to the plaintiff. *See Dinterman v. Nationwide Mut. Ins. Co.*, 26 F.Supp.2d 747, 749–50 (E.D.Pa.1998). A court should consider both private and public interests when deciding a motion to transfer for convenience. *See Jumara*, 55 F.3d at 879. The private interests to be considered in deciding a motion to transfer venue include:

> the plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations, punctuation omitted). The public interests to be considered include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations, punctuation omitted).

Although this is a very close case, consideration of the factors outlined in *Jumara* requires that this action be transferred to the Southern District of New York.

The private factors slightly favor transfer. The claim arose in the Southern District of New York. While the plaintiff's

---

**8.** In addition, when courts in this district have considered the transfer of removed actions without addressing whether section 1406(a) may apply when venue is proper but personal jurisdiction is lacking, they have generally found that these actions may only be transferred for convenience under section 1404(a). *See Chicosky*, 979 F.Supp. at 319 (holding that because action could only have been removed to one district under the removal statute, it could not be transferred under section 1406(a)); *Lamusta v. Lawson Mardon Wheaton, Inc.*, No. Civ.A. 99–3931, 2000 WL 274013, at *2 (E.D.Pa. Mar.13, 2000) ("[A] party in a properly removed action may and must proceed under § 1404(a) to seek any change of venue."); *Beagle v. State Farm Ins. Co.*, No. Civ.A. 92–2974, 1992 WL 172591, at *1 (E.D.Pa. July 13, 1992) (finding venue in removed action proper, but transferring for convenience); *see also Fillmore Mercantile, Inc. v. ETM Entertainment Network, Inc.*, No. Civ.A. 98–4133, 1999 WL 178547, at *5–6 (E.D.Pa. Mar.29, 1999) (holding that removal does not waive defendant's right to object to venue; applying section § 1404(a)); *Betz Lab., Inc. v. Trahan*, No. Civ.A. 93–3989, 1993 WL 335040, at *2 (E.D.Pa. Aug.30, 1993) (same); *But see PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72–73 (noting in dicta that the removal statute only governs federal district court venue and suggesting that because a federal court's jurisdiction upon removal is derivative, any defect regarding venue or jurisdiction in the underlying state case may be asserted before the federal court).

choice of forum is normally accorded considerable deference, that choice is given less weight where, as here, few, if any, of the operative facts took place in this forum, *see National Mortgage Network v. Home Equity Ctr.*, 683 F.Supp. 116, 119 (E.D.Pa.1988), and the defendant has indicated strong preference for another district. The convenience of the parties marginally favors retaining the case in this district as Columbia is a large institution and the plaintiff is an individual. While the plaintiff argues that many of his witnesses are located in the Eastern District of Pennsylvania or New Jersey, neither party argues that witnesses cannot be compelled to appear in either fora, *see* Fed.R.Civ.Pro. 45(b)(2) (authorizing service of subpoenas within 100 miles of the deposition or trial), nor does either party argue that records would be unavailable in either fora. Thus, the court finds that of the factors that favor one party's preference over the other's, the fact that the claim arose in New York should be accorded more weight than the plaintiff's marginal convenience in litigating the claim here, especially since this court does not have jurisdiction over the plaintiff.

Consideration of the public factors also slightly favors transfer. As noted, much, if not all, of the allegedly tortious conduct took place in the Southern District of New York, making it more expeditious to try the case there. Moreover, this court's lack of personal jurisdiction over the defendant makes trial in this forum impossible. As to the remaining factors, either the parties have not provided sufficient information for the court to evaluate them or those factors do not favor either side.

### 3. Interests of Justice Transfer

Transfer of this action under 28 U.S.C. § 1631 is also appropriate. That section provides:

> Whenever a civil action is filed in a [federal] court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Courts, in this circuit and elsewhere, are split on the question of whether section 1631 may be applied when a court lacks personal jurisdiction or whether it should be limited to instances where the court lacks subject matter jurisdiction. *See, e.g., Ross v. Colorado Outward Bound Sch., Inc.*, 822 F.2d 1524, 1526–27 (10th Cir.1987) (holding that action in which transferor district court lacked personal jurisdiction should have been transferred under section 1631 rather than sections 1406(a) or 1404(a)); *Chicosky*, 979 F.Supp. at 320–23 (transferring action in which court lacked personal jurisdiction under section 1631); *Jaffe v. Julien*, 754 F.Supp. 49, 53 (E.D.Pa.1991) (holding that the plain language of section 1631 permits transfer for lack of personal jurisdiction); *Andrews v. Compusa, Inc.*, No. Civ.A. 99–3420, 2000 WL 623234 (E.D.Pa. May 15, 2000) (same); *But see, e.g., McTyre v. Broward Gen. Med. Ctr.*, 749 F.Supp. 102, 105 (D.N.J.1990) (holding that section 1631 only applies when the court lacks subject matter jurisdiction); 17 Moore's Federal Practice § 111.51[3] (noting that some courts, relying on legislative history, "strictly interpret Section 1631's phrase 'want of jurisdiction' to refer only to a lack of subject matter jurisdiction[,]" and citing cases so holding.). The Third Circuit has suggested in dicta that section 1631 may be used to transfer an action when personal jurisdiction is lacking, but has not confronted this question squarely. *See, e.g., Renner v. Lanard Toys, Ltd.*, 33 F.3d 277, 284 (3d Cir.1994) (suggesting that if the district court finds lack of personal jurisdiction on remand, it may consider whether transfer is appropriate un-

der section 1631); *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1066 n. 17 (3d Cir. 1982) (suggesting that, where district court lacks personal jurisdiction over some defendants, on remand the court may consider transfer under section 1631). The court agrees with those cases holding that the plain language of the statute does not limit the applicability of section 1631 to subject matter jurisdiction. Therefore it is appropriate to consider whether transfer to the Southern District would serve the interests of justice.[9]

In this case, transfer is warranted. As noted, much, if not all, of the alleged acts giving rise to this cause of action occurred in New York, and the Southern District court may compel the appearance of witnesses and the production of documents located in Philadelphia. While the court makes no comment as to which law the transferee court would apply, it notes that two years have passed since William's death and that Pennsylvania imposes a two year statute of limitations for negligence actions. *See* 42 Pa.C.S. § 5524; *cf. Colonna v. Rice*, 445 Pa.Super. 1, 664 A.2d 979, 980 (1995) (noting that under the discovery rule, the statute of limitations does not begin to run until the discovery of the injury is reasonably possible). *But see* N.Y. CPLR § 214–a (providing that the statute of limitations for medical malpractice is two years and six months). Thus, it is possible that, were the action to be dismissed rather than transferred, the plaintiff would be barred from bringing his claim in another forum. Transfer to the Southern District of New York is in the interests of justice.

III. Conclusion

Columbia is not subject to either general or specific jurisdiction in Pennsylvania as it does not have the necessary minimum contacts such that it could reasonably anticipate being haled into court here under either jurisdictional theory. Transfer under section 1406(a) is not appropriate because the plaintiff resists transfer. However, under section 1404(a), consideration of the *Jumara* factors dictates that this action should be transferred to the Southern District of New York. Alternatively, this action is also transferred in the interests of justice under section 1631.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 2nd day of September, 2000, upon consideration of defendant's Motion for Reconsideration or, in the Alternative, for the Preliminary Hearing Pursuant to F.R.Civ.P. 12(d) Regarding Personal Jurisdiction, the response and reply thereto, it is hereby **ORDERED** that the Motion is **GRANTED.** This court lacks personal jurisdiction over the defendant. Accordingly, this action is **TRANS-FERRED** to the Southern District of New York. The Clerk shall transfer the record to that district.

---

**9.** An additional issue presented by the instant action is whether a removed action may be transferred under section 1631. The statute is applicable only to actions filed in a federal court and only permits transfer to "any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631. It is arguable that, under a narrow reading of the statute, transfer of removed cases is not permissible, since they can only be brought to the federal district embracing the state court from which the action is removed. *See* 28 U.S.C. § 1441(a). The court, however, declines to read section 1631 so narrowly. At the time the action was filed in state court, it could also have been brought in the Southern District of New York, *see* 28 U.S.C. § 1391(a), and therefore can be transferred to that district. *See Ross*, 822 F.2d at 1527 (holding that removed diversity action should be transferred under section 1631); *Andrews*, 2000 WL 623234, at *3 (transferring removed diversity action under section 1631).